## BAKER v. DEAN.

### No. 7710.

Circuit Court of Appeals, Ninth Circuit.

Dec. 18, 1935.

Joseph F. Westall, of Los Angeles, Cal., for appellant.

Lyon & Lyon and Reginald E. Caughey, all of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This is an action in equity alleging the infringement by the appellee of six claims of the letters patent No. 1,774,552 granted to J. T. Phipps September 2, 1930, for an earth-boring drill and "particularly directed to a drill of the rotary type having provisions for taking a core of the formation drilled through." Among other defenses the appellee alleged prior use. The court sustained this defense, holding that there had been a public use and sale of the invention more than two years prior to the application for the patent. The situation disclosed by the pleadings, answers to interrogatories, and evidence is decidedly unique. It seems that the inventor made his invention in the latter part of the year 1923; that patterns of the drill he had invented were made and exhibited to a manufacturer who produced a drill; an assignment of an interest in the invention was made to the Superior Core Drilling Company a trust; the patent was applied for January 8, 1924; some of the claims of the patent were allowed but the patent was not issued; and on July 27, 1927, a renewal of the application was made, more than two years having expired since the original ap-

plication. The applicant was required to amend his second application by describing it as follows: "This is a new application filed in place of my abandoned application serial 685025 filed January 8, 1924, for an earth-boring drill." The drawings used in the second application were identical with those used in the first with the exception of an added drawing showing another view of the implement invented. That several of the patented drills were constructed and used is admitted. The contention between the parties narrows itself to the question whether or not such use was experimental. The only public use relied upon by the appellee is that by the inventor and those who manufactured drills for the inventor or used them with the knowledge and at the instance of the inventor or purchased them from him. In view of the fact that the appellant objected to the introduction of the defendant's evidence concerning a public prior use on the ground that thirty-day notice of the intention to offer such evidence as required by statute (35 U.S.C.A. § 69, amending R.S. § 4920) had not been given, we will first consider the somewhat unusual state of the case as shown by the pleadings and interrogatories filed long before the trial.

The plaintiff alleged that the patent issued September 2, 1930, and that the "invention had not been, for two years prior to the date of the application for patent, * * * in public use in this country." It specifically alleged that the inventor made application to the Commissioner of Patents for letters patent on January 8, 1924; that on December 29, 1923, the inventor sold to the Superior Core Drilling Company, a trust, the entire right, title, and interest in and to an application therefor, made January 8, 1924. It alleged that the patent in suit was subsequently issued thereon, and further alleged: "That immediately after the production of such invention by said John T. Phipps said invention went into use and this plaintiff has used and is using a considerable number of earth-boring drills containing said invention patented in and by said letters patent." The pleading ignores the fact that the original application was abandoned and that the patent in suit was issued on an application which was not made until July 27, 1927. The appellee admitted these allegations and contends that the plaintiff by these allegations has "admitted that the invention was in public use more than two years prior to the filing date of the application for the Phipps patent." More than thirty days before the trial of the case appellee submitted certain interrogatories to the appellant. To the question whether or not the appellant or his predecessor had "manufactured and/or sold earth-boring drills embodying the invention of the patent in suit," the appellant answered: "They did for experimental use only." To the next interrogatory appellant was asked to state "what purchaser or purchasers began such manufacture and/or sale and state the date or dates thereof." To this the appellant answered: "The Superior Core Drilling Company in the fall of 1923." To the interrogatory as to whether or not the inventor manufactured an earth-boring drill embodying the invention prior to July 27, 1925 (two years before the new application) the appellant answered: "Yes, experimentally he did."

In view of the allegations of the pleadings and the answers to the interrogatories and the fact that 18 days before the trial the appellee furnished the appellant the information required by statute, no prejudicial error has been committed. Prior use was not only alleged in the complaint and admitted in reply to the interrogatories, but also the only contention appellant makes in regard thereto is that the use was experimental and therefore not such as avoided the patent. The inventor testified that several of these drills were made; whether two or five is not material. He testified that the drills were used by third parties, that they were sold to them for such use, and that the sale was for the purpose of making money; all more than two years before the second application for the patent. This evidence alone is sufficient to sustain the findings of the trial judge. The appellant attacks the testimony of the inventor as a hostile witness produced by the defendant and claims that his evidence should be entirely disregarded because he was successfully impeached by proof that he had committed perjury. The question of the credibility of this witness was for the trial judge. The claim of impeachment by proof of perjury is much emphasized by the appellant. It is based entirely upon the fact that in the renewal application for the patent the witness stated that there had not been public use of the invention two years prior to the application. As already pointed out, the application, as verified by the witness, was for a renewal

which would relate back to the date of the original filing. Subsequently the form of the application was changed, apparently without any new verification. There is no reason to believe from the evidence that the witness committed deliberate perjury or that he intentionally misstated the facts. His evidence seems to be entirely frank and impartial, and we see no reason for overturning the opinion of the trial judge based upon that testimony which was not only amply supported by other evidence, but conforms to the admission of the parties except that the appellant claims that the use was experimental and the inventor testified it was not experimental but was commercial, that the drills manufactured in accordance with the patents were sold, and the purchase price collected in part. The trial court was justified in its conclusion that the use was public and commercial. The difference between the parties is more in the matter of opinion, as to the law than as to the facts, although the appellant does claim there was no sale of these drills.

It is clear from the entire situation that the parties deemed themselves amply protected by the patent application and that there was therefore no reason for concealing and no attempt to conceal the invention and no reason for not selling and using the same. The testimony is that there was great need and demand for some sort of device for recovering the cores which would indicate to the driller the character of the formation through which they were drilling for oil, and that the drillers were inclined to use any device for that purpose which showed a reasonable probability of success.

It is unnecessary to go into further details concerning the manufacture and use of the invented drill except to say that two different manufacturers produced them but it was found from their use in actual drilling operations that in one instance the core drilling device broke loose from the drill and was left in the well, thus imperiling the success of the well. It was found also that the collection of sand and mud between the core drill and the main drill resulted in jamming the device. After some two or three months, the inventor abandoned the attempt to use the invented device which calls for an inner cylinder moving telescopically within the larger drill and secured the two parts together by screw threads to avoid the difficulties encountered in the use of the invention. The inventor testified that with the parts thus secured together cores were recovered by the device of burning and "freezing" the lower end of the core in the core drill so that the lower end of the core itself was hardened into stone-like consistency and thus retained the core in the drill without the use of the core retaining device of the invention. Apparently no drills conforming to the patent drawings have since been manufactured or sold because it was found to be impractical.

However, the plaintiff, shortly before the commencement of this suit, manufactured a number of core retaining drills, but they were not in the form shown in the patent drawings and indeed were more nearly like the alleged infringing device for which the appellee had secured a patent than like the device shown in the patent. Appellant, of course, contends that the drills manufactured by him shortly before the commencement of this action are covered by his patent, as he also contends that the similar device of the appellee was covered thereby. The question of whether or not these drills manufactured by the appellant and by the appellee were covered by the patent was not passed on by the trial court and it is unnecessary for us to do so.

Decree affirmed.