## PATENT & LICENSING CORP. v. OLSEN.

**No. 84, Docket 21802.**

United States Court of Appeals Second Circuit.

Argued Jan. 3, 1951.

Decided April 26, 1951.

Alexander & Green, New York City, William R. McDermott, New York City, of counsel for defendant-appellant.

Sullivan & Cromwell, New York City. John G. Dorsey, New York City, of counsel, for plaintiff-appellee.

Before L. HAND, Chief Judge and SWAN and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff, Patent and Licensing Corporation, a wholly owned subsidiary of The Flintkote Company, manufacturing building materials, sought specific performance of an agreement entered into between it and Anders C. Olsen, an inventor of fastening and other devices useful in the building trade, and Olsen Products Company, a corporation owned by Olsen which held title to certain patents developed by him, whereby he agreed to assign to the plaintiff patents on any inventions he might make while in the latter's employ. The contract was made and was to be performed in New York.

Because the plaintiff—hereinafter called P & L—was desirous of obtaining exclusive licenses to use certain patents owned by Olsen Products Company and Olsen, P & L, Olsen and Products, on April 19, 1941, entered into an agreement providing that:

(1) P & L would employ Olsen for a period not to exceed one year at a bi-weekly salary of $192.30 [clause 1(a)], but P & L should have the right to terminate the employment of Olsen at any time and if it should terminate it prior to one year from the date of the agreement such termination, but not a termination by Olsen of his own accord, would cancel the agreement and the rights and obligations of the parties thereunder; Olsen would perform such duties as P & L might direct, and also would assign to P & L his entire right, title and interest in all inventions and improvements relating to or useful in connection with the business which P & L or the Flintkote Company might carry on during the period of such employment, excepting, however, inventions or improvements relat-

ing to clips licensed or agreed to be licensed under the provisions of paragraph *2 infra.*

(2) Olsen and Products would grant to P & L an exclusive license to manufacture, use and sell certain items on which Olsen and Products held, or during the terms of the agreement would hold, patents.

Under clause 14 the agreement was to run until the expiration of the latest patent to issue under the applications enumerated in a schedule attached to the contract, or referred to in paragraph 2, on which P & L had been granted a license, unless sooner terminated pursuant to any of the following provisions:

"9. Unless terminated prior to one year from the date hereof in accordance with the provisions of paragraph 1 hereof, P & L shall have the right to terminate this Agreement at any time thereafter by giving ninety (90) days prior written notice thereof to Olsen."

"10(c). Products shall have the right to terminate this Agreement on March 1, 1943, or on March 1 of any subsequent year during the continuance in force of this Agreement, by giving P & L thirty (30) days prior written notice" if royalties to Products under the agreement did not aggregate $5,000 in the year preceding the termination.

On account of wartime building restrictions, yearly royalties to Products under the agreement never reached $5,000 and P & L felt that it did not need Olsen's full services. Negotiations leading to a modification of the contract having failed, P & L, acting under clause 1(a), on January 15, 1946, terminated Olsen's employment as of January 31, 1946. On January 26, 1946, pursuant to clause 10(c), Products terminated the agreement as of March 1, 1946. Thereafter, on September 9, 1946, P & L brought this action to require Olsen to assign to P & L three patents covering inventions allegedly made by Olsen while in P & L's employ. (The Asbestos Siding Fastener, U. S. Patent No. 2,368,867, Canadian Patent No. 430,217, and the Split Nail, U. S. Patent No. 2,404,245.) Olsen answered alleging want of mutuality as a bar to specific performance, asserting

that the agreement had been entirely cancelled by the termination of his employment, denying that the Split Nail was invented while he was employed by P & L and counterclaiming for 90 days wages ($1,235.70) due on termination of his employment. On this appeal, Olsen argues as an additional defense that the patents in question involved improvements on devices licensed under clause 2 of the agreement and were thus not required to be assigned.

P & L's motion for summary judgment dismissing the counterclaim was granted by Goddard, J., 71 F.Supp.181 and P & L's action for specific performance was tried without a jury by Barksdale, J., who ordered specific performance as prayed for. Olsen now appeals from the orders of Goddard, J., and Barksdale, J.

Olsen argues that P & L's action in terminating his employment pursuant to clause 1(a) of the contract effected "a cancellation of this entire agreement," including his duty to assign the patents in question, as P & L's continuation of his employment beyond the term set forth in clause 1(a) constituted a yearly renewal of his employment each April 19 on all the terms of clause 1(a) including the provision that termination "prior to one year from the date hereof * * * shall * * * effect a cancellation of this entire agreement." We do not so understand the contract. It is in two parts: the first provided for Olsen's employment and the assignment of patents on inventions developed while Olsen was so employed in consideration of a stated salary; the second provided for the licensing of certain patents to Products. Each part contained its own duration and termination provisions. Part one was to last for a year and could be terminated by P & L or Olsen at any time but, if terminated within a year of April 19, 1941, cancelled the entire agreement; part two was to last until the expiry of the patents involved and could be terminated by Products if royalties were insufficient, or by P & L on ninety days notice. It is true that an inference arises from employment continued beyond the terms of contract that is on the same terms as set forth

in the contract, Adams v. Fitzpatrick, 125 N. Y. 124, 26 N.E. 143, but this is the case only to the extent that there is nothing in the contract to negative such an inference. Such is not the situation here. Clause 1(a) contains the only reference in the instrument to cancellation. After one year from the date of the contract clauses 9 and 10(c) provide a method of terminating but not cancelling the agreement. The interpretation which Olsen suggests would require us to find a contradiction between clauses 1(b) and 9, and ignore the plain meaning of the latter. Olsen himself acknowledged this by terminating the agreement pursuant to clause 10(c) *after* P & L had terminated his employment pursuant to clause 1(a). We, therefore, conclude that the termination of Olsen's employment after April 19, 1942, did not cancel the agreement.

Olsen's other reasons for refusal to assign the patents do not impress us. There is no merit to his contention that the contract lacked mutuality. It is well settled that an agreement on the part of an inventor to assign inventions developed while in the employ of another is not inequitable, or unconscionable. E.g., Paley v DuPont Rayon Co., 7 Cir., 71 F.2d 856. Both the contract of employment which included the duty to assign patents on inventions made during its term and the contract to license P & L to use Products' and Olsen's patents were supported by full and adequate consideration. There is no lack of mutuality in the respective termination provisions. Either party could terminate Olsen's employment, P & L "at any time," Olsen "of his own accord and volition." Either party could terminate the agreement for a breach of its terms; P & L could terminate it on 90 days' notice, Products if royalties failed to reach $5,000 in any year. Olsen had additional protection in that a termination of his employment during the first year of the agreement effected an entire cancellation of the agreement. Under the circumstances, and having accepted the stipulated compensation for five years, he cannot now be heard to say that a court should not require him to perform his part of the agreement.

Judge Barksdale specifically found that both the "Asbestos Siding Fastener" and the "Split Nail" were invented during the term of Olsen's employment and not before, and that both were useful in P & L's and Flintkote's business. There was ample evidence to support this finding and substantially none to the contrary. We will not upset it here.

Olsen's argument that the patents in question are saved from assignment by the exception to clause 1(b) which makes it unnecessary for Olsen to assign inventions on improvements of patents licensed under clause 2(a) was not raised in the trial court. It cannot be raised here. Furthermore, it appears from the description in the record of the Asbestos Siding Fastener and Split Nail that these devices were not of the type licensed under clause 2(a) as they were not "designed or intended for use in attaching fiberboard, fiberboard tile, fiberboard plank, gypsum board, gypsum board plank, gypsum lath, gypsum blocks and metal lath, to wall and ceiling structures," but were for use in securing weatherproof shingles to the outside of buildings. To interpret the exclusion of clause 1(b) as broadly as Olsen would have us, would render the agreement to assign inventions substantially meaningless for it would cover any invention that Olsen was likely to make. The patents for the Asbestos Siding Fastener and the Split Nail were not for improvements relating to clips agreed to be licensed but for inventions of a different kind and fairly within the agreement to assign.

Olsen's counterclaim remains to be considered. It is his contention that if we decide, as we have, that he did not hold over as an employee on the exact terms of clause 1(a), beginning anew on April 19 of each year, then the notice provisions of clause 9 should apply after April 19, 1942, both as to the agreement as a whole and to his employment, rather than the "at any time" proviso of clause 1(a), and that he is therefore entitled to ninety days severance pay from the time when he was notified of his impending dismissal. An examination of the agreement as a

whole leads us to conclude that the parties contemplated that Olsen's employment beyond April 19, coupled as it was with a surrender of his right to cancel the entire agreement if dismissed, implied a duty on the part of P & L to give ninety days' notice of his dismissal under clause 9 although such dismissal would not terminate the licensing part of the agreement. It is the only clause that would seem to cover rights of Olsen to compensation after the end of the first year.

For the reasons stated, the order dismissing the counterclaim must be reversed and the cause remanded to determine the amount owing Olsen thereon, and the order decreeing specific performance of Olsen's promise to assign the patents in question is affirmed.