**PACIFIC CONTACT LABORA-
TORIES, Inc., et al.**

v.

**SOLEX LABORATORIES, Inc.**

No. 13333.

United States Court of Appeals
Ninth Circuit.

Dec. 9, 1953.

Rehearing Denied Feb. 19, 1954.

Mason & Graham, Collins Mason, William R. Graham, Los Angeles, Cal., for appellants.

Fred H. Miller, Los Angeles, Cal., for appellee.

Before STEPHENS, ORR and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Solex Laboratories, Inc., as the assignee of Kevin M. Tuohy, was issued Patent No. 2,510,438 on June 6, 1950. The patent claims a contact vision corrective lens which fits on the cornea [1] of the eye.

Contact lenses are admittedly old in the art of vision correction. However, the contact lenses in general use prior to the Tuohy patent were shaped to the identical curvature of the fitted eye and were held in place by the use of scleral flanges that extended over the white of the eye and under the eyelids.[2] Their design cut off the flow of natural fluids, blood and oxygen to the eye. Therefore, the use of contact lenses required the insertion of a buffer solution between the eye and the lens. The buffer solution had to be specially prepared for each person and, even with its use, the lenses could be worn for an average of only four hours.

Tuohy's claim of invention lay in the development of a contact lens which eliminated the need for buffer solutions and which could be worn for long periods without causing eye irritation. Tuohy accomplished this result by eliminating the scleral flanges and making a lens slightly smaller than the limbus [3]

1. The transparent outer coat of the eyeball that covers the colored iris and the pupil. Its extension over the white of the eye is known as the sclera.

2. See, e. g., Volle Patent No. 722,059, issued March 3, 1903.

3. The circular protruding margin between the iris and the white of the eye or the sclera.

portion of the eye, but larger than the maximum opening of the iris and by making the radius of curvature on the concave side of the lens slightly greater than the radius of curvature of the eye at the cornea [4] upon which the lens rests, thus enabling the natural fluids to reach all portions of the eye. The lens has less curvature than that of the eye and rests on the cornea only at its center point. Yet the lens remains in place, probably through capillary action, and by the slight protrusion of the limbus; and any tendency on the part of the lens to slip off the apex of the cornea can be countered by blinking the eyelids. The inside marginal edge of the lens is beveled both for smoothing and to enable the lens to pass over the raised limbus.

Solex markets its lens under the name "Corneal" or "Tuohy Corneal". In June, 1950, after receiving its patent, Solex notified Dr. Morris Green (party defendant) that the contact lens which he was selling infringed Solex's newly acquired patent. Dr. Green nevertheless continued his activities and on October 25, 1950, Solex filed suit praying that Dr. Green, and Pacific Contact Laboratories, Inc., which is under his control, and Lee W. Hoggan, who is the manager of Pacific Contact Laboratories, Inc., be enjoined from infringing Solex's patent

and from using the "deceptively similar name 'Cornea'". Solex further sought an accounting for profits and damages, plus costs and a reasonable attorney's fee.

The district court found the patent valid and infringed, and that defendants' use of the words "Cornea" and "Corneal" amounted to unfair competition with Solex's use of the words "Corneal Lens" and "Tuohy Corneal Lens". The defendants were enjoined on both counts and Solex was awarded damages in the amount of $5.00 per pair of contact lenses sold [5] by defendants, plus costs, and $500.00 as attorney's fees. Defendants appealed.

Appellants challenge the validity of Patent No. 2,510,438 on four separate grounds, namely: (1) Tuohy did not invent the corneal type contact lens; (2) The Corneal type contact lens claimed by Tuohy lacks any "flash of creative genius"; [6] (3) The claims do not describe the alleged invention in a clear and definite manner; [7] (4) The Tuohy patent is at best a "method" patent and as such cannot be protected by an "article" patent.[8]

■ The district court concluded that the patent was valid as to each of the two claims made,[9] and we may not disturb the court's conclusion since it is

4. See footnote 1.

5. $575.00 total.

6. Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58.

7. Title 35 U.S.C.A. § 33, now §§ 111, 112.

8. Citing Nestle-Le Mur Co. v. Eugene, 6 Cir., 1932, 55 F.2d 854.

9. Record on Appeal, p. 243: Patent No. 2,510,438: Claim 1: "A contact lens applicable to the human eye comprising a concavo-convex lens formed of light-transmitting material having a marginal size smaller than the limbus portion of the eye to which it is applicable but larger than the maximum iris opening, said lens having a radius of curvature on its concave side slightly greater than the radius of curvature of the cornea to which it is applied so that radially from

the center of the lens there will be a small but gradually increasing clearance for the entry of natural eye fluids between the lens and the cornea, said lens being ground to correct for visual deficiency." Claim 2: "A contact lens applicable to the human eye comprising a concavo-convex lens formed of light transmitting material having a marginal size smaller than the limbus portion of the eye to which it is applicable but larger than the maximum iris opening, said lens having a radius of curvature on its concave side slightly greater than the radius of curvature of the cornea to which it is applied so that radially from the center of the lens there will be a small but gradually increasing clearance for the entry of natural eye fluids between the lens and the cornea, said lens being ground to correct for visual defi-

supported by findings of fact which we do not regard as clearly erroneous [10] for the reasons hereinafter stated.

### Did Tuohy Invent the Corneal Type Lens

Appellants contend that the corneal contact lens was anticipated by an invention of E. Kalt as disclosed in 1942 in the book "Contact Lenses" by Obrig,[11] which was admitted into evidence. Kalt's development was described in the Obrig book as follows:

"He [Kalt] ground some small lenses to correct keratoconus [12] which had no scleral band, and rested at the edge of the cornea. They were designed to exert some pressure on the apex of the conus in an attempt to reduce the ecstasia as well as to correct the visual error. As might be expected, they were unsuccessful."

The Patent Office issued Patent No. 2,510,438 with knowledge of the Kalt lens and the Obrig book. The district court considered the Kalt lens and rejected it as an anticipation. The quotation itself shows both that the objective which Kalt sought to reach was different from Tuohy's objective and that the Kalt lens was unsuccessful. If a prior art device is adaptable to a purpose, but it is not so adapted, that is evidence that the changes required more than mere mechanical skill and may support a conclusion of no anticipation.[13] And a prior unsuccessful experiment does not constitute invention and cannot therefore be an anticipation.[14]

It must also be noted that the Patent Office, only after making a close examination of Tuohy's claim of invention, granted him a patent on the corneal type lens. And there is evidence that the corneal lens met with wide acceptance and success only after Tuohy put it on the market. We, therefore, conclude that the district court's finding that Tuohy invented the corneal type lens is not clearly erroneous.

### "Flash of Creative Genius"

The Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91, 62 S.Ct. 37, 41, 86 L.Ed. 58, set forth the following tests for a patentable device:

" * * * the new device, however useful it may be, must reveal the flash of creative genius, not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain."

However, on July 19, 1952, as part of the revision of Title 35 U.S.C.A. on Patents, 66 Stat. 792, Congress enacted § 103 which provides in part that,

"Patentability shall not be negatived by the manner in which the invention was made."

The Reviser's note interprets this sentence to mean "that patentability as to this requirement [i. e., invention] is not to be negatived by the manner in which the invention was made, that is, it is immaterial whether it resulted from long toil and experimentation or from a *flash of genius* [italics ours]." That is, as we understand it, the Congress by enacting § 103 showed its fear that the meaning of the phrase "flash of creative

ciency and having a bevel at its marginal edges on the concave side thereof."

10. Rule 52(a), Federal Rules of Civil Procedure, Title 28 U.S.C.A.; United States v. United States Gypsum Co., 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L. Ed. 746; Refrigeration Engineering v. York Corp., 9 Cir., 1948, 168 F.2d 896, 899.

11. Published by Chilton Co.; Philadelphia, Pa., 1942; pages 370 to 373, and 129 and 130.

12. Keratoconus: conical protrusion of the cornea.

13. Trabon Engineering Corp. v. Dirkes, 6 Cir., 1943, 136 F.2d 24. See, also, Motor Improvements v. General Motors Corp., 1931, 6 Cir., 49 F.2d 543.

14. Seymour v. Osborne, 1870, 11 Wall. 516, 552, 78 U.S. 516, 552, 20 L.Ed. 33; The Corn Planter Patent, 1874, 23 Wall. 181, 210, 211, 90 U.S. 181, 210, 211, 23 L.Ed. 161.

genius" as used by the Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., supra, would result in excluding from patentability most if not all mechanical advances derived from study and experimentation. We do not think the phrase "flash of creative genius" implies, or was intended to imply, that patents or patentability spring from inspiration at the cost of reason. The phrase was used more for emphasis than as patent dogma, and the Supreme Court was emphasizing the principle that patentability implies more than mere mechanical skill and that a phase of discovery is necessary. The opinion in which the phrase is used did not change the law. But should it be held otherwise, then the new law created by it brought no change as to the instant case, for we are dealing with an unexpired patent and § 4(a) of the revised Act (inclusive of § 103) contains the provision that the terms of the new Act " * * * shall apply to unexpired patents granted prior to such [effective] date [of the revised Act]", 35 U.S.C.A. note preceding section 1, with certain exceptions not here pertinent. Thus, the phrase "flash of creative genius", as Congress understood it, was emasculated as to the validity of existing unexpired patents and made wholly ineffective as to future patents.

■ The district court could not well say that the development of a lens, which utilizes the limbus and capillary action to retain its position and which is so shaped as to utilize the natural fluids of the eyes to avoid irritation, is the result of mere mechanical skill. There is present, also, an idea in advance of the art to which mechanical skill of high order was applied. There is no clear error in the conclusion of the Patent Office and of the district court that this lens is a patentable invention.

■ Appellants raise two defenses not raised in the district court, to-wit: That there was no adequate description of the alleged invention filed in the Patent Office, and that the alleged invention is for a "method" rather than for an "article". In reply, appellee urges the well known principle that objections not made before the trial court cannot be raised here on appeal.[14a] Whether we could consider either of these questions *sua sponte,* we need not and do not decide, for when laid by the side of a statement of the case they are more pointlessly technical than meritorious.

### Attorney's Fees

■ The district court awarded appellee reasonable attorney's fees. In doing so, the court exercised the discretion conferred upon it by Congress.[15] Appellants contend that the award of fees was an abuse of that discretion, since appellants' action in copying the Tuohy lens did not amount to "wilful conduct or bad faith". Citing Dubil v. Rayford Camp & Co., 9 Cir., 1950, 184 F.2d 899. Appellants' lens is a "Chinese" copy of the Tuohy lens. Appellants' defense was that the Tuohy lens was not patentable. The district court found upon substantial and convincing evidence that the Tuohy lens was patentable and concluded that appellants' infringement was "both deliberate and wilful". We hold that the district court did not abuse its discretion in awarding attorney's fees in this case.

### Motion for New Trial

■ Appellants' motion for a new trial upon the ground of newly discovered evidence was denied by the district court

---

14a. See Rule 12(h), Federal Rules of Civil Procedure, Title 28 U.S.C.A.; Baker v. Dean, 9 Cir., 1935, 80 F.2d 658, 660; Oxnard Canners, Inc., v. Bradley, 9 Cir., 1952, 194 F.2d 655, 659; Patent & Licensing Corp. v. Olsen, 2 Cir., 1951, 188 F.2d 522, 525; but cf. Nachman Spring-

Filled Corp. v. Kay Mfg. Co., 2 Cir., 1943, 139 F.2d 781, 783.

15. Title 35 U.S.C.A. § 70, " * * * The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case." Cf. new § 285.

for lack of diligence. The motion is directed to the sound discretion of the trial court and is not ordinarily reviewable except where that discretion has been abused.[15a] We do not find such abuse here. Over seven months had elapsed between the filing of the action and the date of trial, and another four months elapsed prior to judgment, without the production of new evidence. Indeed, new evidence was not offered until after new counsel had been substituted by appellants at a time when, as the district court pointed out, appellants had already had their day in court. Furthermore, the alleged new evidence consists of an affidavit of a doctor who used a corneal type lens, which from its description in the affidavit may be similar to the article in suit, for eye operations from 1932 to 1937, together with an article in a professional publication which refers to unsuccessful experimentation with the corneal type lens. So long as the prior public use of an invention is experimental, it will not defeat the validity of a patent. Research Products Co. v. Tretolite Co., 9 Cir., 1939, 106 F.2d 530, 534-5.

### Unfair Competition

 Appellants have been enjoined from marketing infringing lenses under the terms "Corneal" and "Cornea". The district court holds the use of those terms by appellants to be unfair competition with appellee's designation of its lens as "Corneal" or "Tuohy Corneal". In order to prove a claim of unfair competition, "it is necessary to establish [among other things] that the name or appearance of the injured product has acquired either a technical trade-mark or a secondary meaning * * *." Ross-Whitney Corp. v. Smith, Kline and French Laboratories, 9 Cir., 1953, 207 F.2d 190, 196.[16] There is no showing that "Corneal" has yet acquired a secondary meaning. There is no evidence that appellants ever used the name "Tuohy Corneal". Therefore, unfair competition has not been established.

Appellee's petition for reasonable attorney's fees on appeal are allowed in the sum of Two Hundred Fifty Dollars ($250.00) and appellee shall recover his costs.

Affirmed as to the finding of patent infringement, and reversed as to the finding of unfair competition.

15a. Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 253, 254, 61 S.Ct. 189, 85 L.Ed. 147; Marshall's U. S. Auto Supply v. Cashman, 10 Cir., 1940, 111 F.2d 140, 141.

