249 F.2d 246
 MOIST COLD REFRIGERATOR CO., Inc., a Corporation, Appellant,
v.
LOU JOHNSON CO., Inc., a Corporation; Meier & Frank Company, Inc., a Corporation; Admiral Corporation, a Corporation; and Amana Refrigeration, Inc., a Corporation, Appellees.
 No. 15057.
 United States Court of Appeals Ninth Circuit.
 October 17, 1957.
 Rehearing Denied November 30, 1957.
 
 Buckhorn, Cheatham & Blore, Orme E. Cheatham, Hugh L. Biggs, Portland, Or., Davis, Hoxie & Faithfull, John B. Cunningham, T. Roland Berner, Aaron Lewittes, New York City, for appellant.
 Ramsey & Kilisch, W. E. Ramsey, J. Pierre Kolisch, Portland, Or., Wilkinson, Huxley, Byron & Hume, Charles L. Byron, William E. Lucas, Francis H. Uriell, Chicago, Ill., for appellee.
 Before STEPHENS, Chief Judge, BARNES, Circuit Judge, and LINDBERG, District Judge.
 BARNES, Circuit Judge.
 
 
 1
 This is an action for damages for patent infringement of Reissue Patent No. 23,058.[1] It was tried in the District Court with a jury. Prior to the trial, Lou Johnson Co. and Meier & Frank Co., both corporations, were eliminated as defendants.
 
 
 2
 The remaining defendants moved for a directed verdict at the conclusion of the plaintiff's case[2] upon the grounds of (1) the invalidity of the patent because of (a) anticipation by the Anderson patent, (b) anticipation by the Anderson patent plus the Larkin patent, (c) aggregation without new results, (d) invalid specifications, (e) indistinct claims, (f) prior use; and (2) a lack of infringement, citing six alleged distinctions. Defendants' motion was denied because the court assumed "that a similar motion will be made at the conclusion of all testimony." This same motion was renewed at the conclusion of testimony, with an additional ground of vagueness and indefiniteness. This motion was taken under advisement.[3]
 
 
 3
 The jury returned a verdict against the defendant Admiral Corporation in the sum of $2,093,180.00, and against the defendant Amana Refrigeration, Inc., in the sum of $45,575.00. The jury also answered special interrogatories favorable to plaintiff, finding (a) invention, (b) lack of ambiguity or vagueness in each of four claims, (c) infringement.
 
 
 4
 Defendants moved that judgment be entered in their favor, notwithstanding the jury verdicts.
 
 
 5
 This motion was granted by the trial court. His remarks at that time are revealing,[4] and should be read in full for a complete understanding of the matter, as it presently stands before us.
 
 
 6
 At the time that the special verdicts were formally set aside and the defendants granted judgment in their favor, the District Court also declared:
 
 
 7
 "The Court on its own initiative, and pursuant to Rule 59(d) of the Federal Rules of Civil Procedure, Orders that in the event that the judgment of this Court in favor of the defendants be reversed on appeal, then the verdict of the jury in favor of the plaintiff and against the defendants and the special interrogatories, returned December 2, 1955, shall be set aside, and a new trial granted on the following grounds:
 
 
 8
 "(1) The verdict is contrary to the clear weight of the evidence.
 
 
 9
 "(2) The damages awarded plaintiff are excessive. Each party shall bear its own costs."[5]
 
 
 10
 The patent in suit[6] was described by the able trial judge as a household refrigerator having a separate freezing compartment and a separate cooling compartment operated by a single liquefying unit with the cooling compartment having a humid temperature, or "moist cold," and non-frosting coil.
 
 
 A — History of Prior Litigation
 
 
 11
 This appeal is not the first in this case. The District Court originally rendered a summary judgment in favor of defendants. The plaintiff appealed, and this Court reversed and remanded, Moist Cold Refrigerator Co., Inc., v. Lou Johnson Co., 9 Cir., 217 F.2d 39, 40. The decision of this Court in the prior appeal discusses the history of litigation surrounding the original patent, No. 2,056,165, issued October 6, 1936. That patent,
 
 
 12
 "* * * claimed a combination of known refrigeration elements and principles to create separate refrigeration compartments for foods desired merely to be cooled and those desired to be frozen, and to eliminate the necessity of defrosting. The sole claim was the combination."
 
 
 13
 Judge Healy spoke for this Court in detailing how the assignee of the original patent brought suit for infringement in the Northern District of Illinois against Stewart-Warner Corporation, and won a verdict for damages from the jury; how the case was appealed; and how the Court of Appeals reversed:[7]
 
 
 14
 "* * * on the ground that the claims of the patent were stated in terms of results and failed adequately to describe the means by which the results would be obtained, in violation of 35 U.S.C.A. § 33 * * *."
 
 
 15
 The Seventh Circuit was guided and largely influenced by the Supreme Court's decision in Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3.
 
 
 16
 Following this reversal, an application for reissue of the original patent was filed June 18, 1948, on the ground the original patent had been held invalid as functional. The reissue patent was granted on December 14, 1948. [Defendants' Exhibit 102]
 
 
 17
 The present action was begun April 23, 1951. After both parties moved for a summary judgment, defendants' motion was granted
 
 
 18
 "* * * on the ground that reissue patent No. 23,058 was void, because no error through inadvertence, accident or mistake, as required by the reissue statute, (35 U.S.C.A. § 64) was or could be shown under the facts * * * The theory of the district court was that as a matter of law failure to anticipate a court decision does not constitute inadvertence, accident or mistake within the intendment of the statute."
 
 
 19
 But this Court held on appeal that there had been no deliberate or skillful drafting of the patent to cover any means that anyone might discover to produce the same result, no fraudulent or deceptive act, no deliberate cancellation during course of negotiations, no intentional omissions, and that the failure of the patentee to foresee the Supreme Court decision in Halliburton Oil was an error occurring through inadvertence or mistake within the sense of the reissue statute. Plaintiff in this case therefore was not barred from proceeding to trial in the lower court.[8]
 
 
 20
 We now turn to the responsibilities and duties of this Court under the circumstances here existing.
 
 
 B — The Law
 
 
 21
 The District Court granted an alternative new trial. In the leading case of Montgomery Ward & Co. v. Duncan, 311 U.S. 243, at page 254, 61 S.Ct. 189, at page 196, 85 L.Ed. 147, the Supreme Court said:
 
 
 22
 "Should the trial judge enter judgment n. o. v. and, in the alternative, grant a new trial on any of the grounds assigned therefor, his disposition of the motion for a new trial would not ordinarily be reviewable, and only his action in entering judgment would be ground of appeal. If the judgment were reversed, the case, on remand, would be governed by the trial judge's award of a new trial."
 
 
 23
 In Snead v. New York Central, 4 Cir., 216 F.2d 169, 172, the court said:
 
 
 24
 "`Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice. See Felton v. Spiro, 6 Cir., 78 F. 576. Verdict can be directed only where there is no substantial evidence to support recovery by the party against whom it is directed or where the evidence is all against him or so overwhelmingly so as to leave no room to doubt what the fact is. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. Verdict may be set aside and new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a miscarriage of justice.' [Inside quote from Garrison v. U. S., 4 Cir., 62 F.2d 41, 42]
 
 
 25
 "* * * If the judge is of opinion that the verdict of the jury was against the weight of the evidence or based on evidence that was false, he should set it aside and grant a new trial, even though direction of a verdict or judgment n. o. v. was not warranted."
 
 
 26
 Disposition of this appeal can take any of three alternative courses. We can either (1) affirm the trial court's action in granting judgment for the defendants n. o. v., (2) remand the case for a new trial, in accordance with the alternative order of the District Court, or (3) hold that the alternative order granting the new trial was an abuse of discretion and reinstate the jury verdicts.
 
 
 27
 In reviewing the validity of the judgment n. o. v. granted by the District Judge, the same Montgomery Ward case, cited above, has this to say: "The motion for judgment cannot be granted unless, as a matter of law, the opponent of the Movant (here appellant) failed to make a case, and, therefore a verdict in Movant's favor should have been directed." Montgomery Ward & Co. v. Duncan, supra, 311 U.S. at page 251, 61 S.Ct. at page 194.
 
 Another Circuit Court has said:
 
 28
 "The rule is well established that a motion for a judgment notwithstanding the verdict presents only a question of law as to whether, when all the evidence is considered together with all reasonable inferences most favorable to plaintiff, there is a total failure or lack of evidence to prove any necessary element of plaintiff's case." O'Day v. Chicago River & Indiana Ry. Co., 7 Cir., 216 F.2d 79, 82.
 
 
 29
 See also: Snead v. New York Central, supra; Burcham v. J. P. Stevens, 4 Cir., 209 F.2d 35; Standard Accident Ins. Co., of Detroit v. Wringet, 9 Cir., 197 F.2d 97; Nattens v. Grolier Society, Inc., 7 Cir., 195 F.2d 449.
 
 
 30
 The question before us then is, as appellant states it: Was there, as matter of law, a total failure or lack of proof on any essential element of plaintiff's case justifying the District Judge's granting the Judgment n. o. v.?
 
 
 31
 We must first determine what were the essential elements of plaintiff's case which he was required to establish, and then examine the record for proof as to each item.
 
 
 32
 Appellant lists these essential elements as follows:
 
 
 33
 "I. The validity of the patent in suit, as to,
 
 
 34
 "(a) standards of invention,
 
 
 35
 "(b) disclosure of the existence of a fin coil, or other extended surface coil,
 
 
 36
 "(c) definiteness of claims.
 
 
 37
 "II. Whether there was infringement:
 
 
 38
 "(a) cold wall refrigerator or fin-type?
 
 
 39
 "(b) did accused structures have a single liquefying unit, defined in the claims?
 
 
 40
 "III. Reasonable damages."
 
 
 41
 At the outset it should be pointed out that we are here dealing with mechanical devices that involve a combining of old elements, well-known in the prior refrigeration art.[9] We must first consider whether the plaintiff in combining these known elements produced a patented device which meets standards laid down for combination patents by the Supreme Court cases. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 130, 95 L.Ed. 162; approving, Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008, which holds:
 
 
 42
 "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, (the old parts) is not patentable invention. * * * The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable."
 
 
 43
 This language was interpreted by this Court in the Jacuzzi case, 214 F.2d 785, 787, Note 2, as
 
 
 44
 "* * * simply saying that where a mechanical combination device represents only an integration of various old elements and the combination clearly reveals that its old elements thus brought into conjunction or concert do not functionally operate differently therein than they did before integration, then it is not a patentable invention. In other words, * * * does * * * the device `exceed(s) the sum of its parts'. If the evidence clearly establishes that the device is of the type just above described, it obviously lacks the quality of invention. * * * And this rule applies regardless of the scope and breadth of the claims of such a patent, because patent claims may not override such established physical facts." [Emphasis by the Court.]
 
 
 45
 By the Jacuzzi case, supra, and the cases upon which it rests, we are committed, and the trial courts of this Circuit are committed, to the rigid standards of invention of Lincoln Engineering Co. v. Stewart-Warner Corp., supra, and Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra; Photochart v. Photo Patrol, 9 Cir., 189 F.2d 625, certiorari denied 342 U.S. 867, 72 S.Ct. 107, 96 L.Ed. 652; Jacuzzi Bros., Inc., v. Berkeley Pump Co., 9 Cir., 191 F.2d 632, 637; Berkeley Pump Co. v. Jacuzzi Bros., Inc., 9 Cir., 214 F.2d 785; Himes v. Chadwick, 9 Cir., 199 F.2d 100; Kwikset Locks, Inc., v. Hillgren, 9 Cir., 210 F.2d 483, certiorari denied 347 U.S. 989, 74 S.Ct. 852, 98 L.Ed. 1123.
 
 
 46
 Counsel for appellant are content with this rule, or at least recognize it as controlling, for they maintain that:
 
 
 47
 "Detailed examination of the patent demonstrates that . . . the elements had, in the combination, a different and added function, than out of it, with unusual or surprising and highly beneficial consequences, * * *"
 
 
 48
 i. e., the whole exceeded the sum of its parts.[10]
 
 (I) Patentability
 
 49
 With this strict rule in mind, we turn to the first question: Was there substantial evidence of a valid grant of letters patent on Reissue Patent No. 23,058, or was there a total failure of proof as to its validity?
 
 
 50
 A similar question was before this Court in Hansen v. Safeway Stores, 9 Cir., 238 F.2d 336, except that in that case the jury had failed to agree, after which the trial judge had directed a verdict in defendant's favor. It was there pointed out that the issue as to whether there subsists in a device upon which letters patent have issued novelty, utility and invention, is one of fact.
 
 
 51
 We are not impressed by the theory that an exposition of the refrigeration needs of a housewife proves invention. The need for a single volatile refrigerant to provide, through a direct expansion machine, at the heat-exchange surfaces, simultaneously and uninterruptedly, two temperatures, one below and one above 32° F., does not prove invention. Nor does the fact that someone else did not bring such combination of elements into being prove, per se, invention. It may aid the proponent of the patent to establish (once the invention has taken place) (a) that that invention was far from obvious, and (b) that it was, in truth, an invention. Once it has been established that a mechanical problem has been recognized as a problem within an industry for a long time, and that men of ordinary skill in the art have failed to meet it, there is at least some ground for the conclusion it was beyond their capacity, and "such a circumstance has not infrequently been held sufficient to carry a discovery across the inventive line." Watson v. Heil, 4 Cir., 192 F.2d 982, 985; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, at page 68, 43 S.Ct. 322, 67 L.Ed. 523.
 
 
 52
 The significance of proof, both of lack of prior discovery, and of public acceptance thereafter, is that this is some evidence that the inventor has done something in his combination which, even though obvious now, was not then obvious to those skilled in the art. Keystone Mfg. Co. v. Adams, 151 U.S. 139, 14 S.Ct. 295, 38 L.Ed. 103; Lincoln Engineering Co. v. Stewart-Warner Corp., supra; Pointer v. Six Wheels Corporation, 9 Cir., 177 F.2d 153, 160; Paraffine Companies v. McEverlast Inc., 9 Cir., 84 F.2d 335, 341.
 
 
 53
 Does the record disclose any substantial proof of invention? Without attempting to weigh the evidence, a careful reading of the record brings us to conclude that there was sufficient evidence to constitute "substantiality," when examined with a critical eye, but one cocked favorably toward the plaintiff. And we find this, having in mind the rigid standards of invention hereinabove discussed. We find that reasonable minds might differ as to whether there was "a new, useful and unexpected result"; whether or not there was an "additional or different function"; whether the whole did or did not, in some way, exceed the sum of its parts. Coleman Co. v. Holly Mfg. Co., 9 Cir., 1956, 233 F.2d 71, 79, certiorari denied 352 U.S. 952, 72 S.Ct. 326, 1 L.Ed.2d 243; Jacuzzi Bros., Inc., v. Berkeley Pump Co., supra; Kwikset Locks, Inc., v. Hillgren, supra; Stearns v. Tinker & Rasor, 9 Cir., 220 F.2d 49, certiorari denied 350 U.S. 830, 76 S.Ct. 62, 100 L.Ed. 741; Filtex Corp. v. Amen Atiyeh, 9 Cir., 216 F.2d 443; Pacific Contact Laboratories, Inc., v. Solex Laboratories, Inc., 9 Cir., 209 F.2d 529, certiorari denied 348 U.S. 816, 75 S.Ct. 26, 99 L.Ed. 643; Patterson-Ballagh Corp. v. Moss, 9 Cir., 201 F.2d 403; Ry-Lock Co., Ltd. v. Sears Roebuck & Co., 9 Cir., 227 F.2d 615; Winslow Eng. Co. v. Smith, 9 Cir., 223 F.2d 438.
 
 
 54
 Of course, no matter whether there was proof of an invention or not, if there was no disclosure of the means by which the invention was accomplished in the patent claims as aided by the specifications, there could be no valid invention. The trial judge ruled that 35 U.S.C.A. § 112 had not been met, because of a failure to disclose the essential "fin coil or other extended surface coil" in the specification. Appellant claims this deficiency was remedied by the testimony, i. e., that an expert by merely looking at the drawing could tell that a fin coil or a brine tank was described. The patent merely states that the difference in temperature between the cooling compartment and the freezing compartment was created by "providing a proper ratio of the cooling elements for said compartment." (Col. 3, lines 44-51.) This plainly means, says appellant, "by a proper proportioning of the heat conducting surfaces of these elements." (Brief, p. 42.) Anyone skilled in the art, runs appellant's argument, could readily use the proper number and size and combination of the well-known coils, expansion valves, or thermostats. Thus appellant tacitly concedes that the particular kind of heat withdrawing surfaces, or their particular dimensions, were not shown in the drawings, but maintains such a disclosure was unnecessary, in view of what was contained in the specifications.
 
 
 55
 Plaintiff's expert testified that such specifications met the requirement of the statute. This was not binding on court or jury, but was "some" evidence. Whether or not a disclosure is sufficient is a question of fact. Schumacher v. Buttonlath Mfg. Co., 9 Cir., 1920, 292 F. 522, 533; Anraku v. General Electric Co., 9 Cir., 80 F.2d 958, 963. We cannot hold that plaintiff's evidence was insufficient, as a matter of law, as to this factual question.
 
 
 56
 This brings us to a consideration of the question whether the claims were sufficiently definite to satisfy the statute.
 
 Claim 2 was admittedly the broadest:
 
 57
 "2. A household refrigerator which in normal operation provides above-freezing moist cold air for preserving in a refrigerated condition foods susceptible to moisture loss by evaporation and below-freezing dry cold air and a dry cold surface for preserving foods in a frozen condition, said refrigerator comprising
 
 
 58
 (a) a cabinet having a cooling compartment and a freezing compartment,
 
 
 59
 (b) thermal insulation around said compartments thermally insulating said compartments from each other and from the outside atmosphere,
 
 
 60
 (c) a cooling refrigerant expander having heat-conducting surfaces within said cooling compartment and constructed and arranged to maintain its heat-conducting surfaces at a temperature above 32° F. while withdrawing heat from said compartment, whereby air in said cooling compartment is cooled thereby to a temperature above 32° F. and is maintained at a humidity whose relative value is at least 100% at 32° F.,
 
 
 61
 (d) a freezing refrigerant expander having heat-conducting surfaces within said freezing compartment and constructed and arranged to maintain its heat-conducting surfaces at a temperature well below 32° F. while withdrawing heat from said compartment whereby air in said freezing compartment is cooled thereby to a temperature well below 32° F.,
 
 
 62
 (e) volatile refrigerant in said expanders,
 
 
 63
 (f) a single liquefying unit associated with said expanders and constructed and arranged to condense refrigerant expanded by heat extracted from both said compartments, the volatile refrigerant circulating through said expanders being the sole heat-extracting medium,
 
 
 64
 (g) and a thermostat responsive to the temperature in one of said compartments controlling the operation of said liquefying unit." [Appellant's Brief, pp. 22-23]
 
 
 65
 Claims 3 and 4 define a preferred form of the combination recited in Claim 2, by a nicer coordination of thermostat control, and varying amounts of insulation.
 
 
 66
 Again, whether the claims of the patent in suit were sufficiently definite to satisfy the statutory requirement as to particularity is a question of fact, decided by the jury in appellant's favor by its answer to the special interrogatories (R. 65 a-b), and as to which the District Judge expressed a doubt. We believe the presumption of validity, arising from the issuance of the patent, plus the expert testimony introduced, is sufficient to make this a question for the jury to determine.
 
 
 67
 We conclude therefore that there was some evidence before the jury of a substantial nature on each of the three issues respecting the validity of the patent in suit — (a) the standards of invention; (b) the required disclosure; and, (c) the definiteness of the claims. This evidence was sufficient to take the issue of fact to the jury, in the first instance.
 
 (II) Infringement
 
 68
 We next consider the question of Infringement. The court found the alleged infringing and accused devices to be "cold-wall refrigerators, as distinguished from the fin-type"; and secondly, that in the accused devices there were two liquefying units with two separate (though in part, contiguous) circuits, while the patent in suit had but one unit, and one circuit. He concluded there were before him two different mechanical devices.
 
 
 69
 Whether the "cold-wall" refrigerator is a different thing than the "extended surface fin" refrigerator is, again, a question of fact. There was evidence in the record given by the defendant Admiral's Chief Engineer (R. 984-985) from which it could reasonably be inferred that a cold-wall was the equivalent of an extended surface-coil fin; though perhaps not so efficient. And the cold-wall had for its purpose the providing of a heat-withdrawing surface for a duct within which the refrigerant fluid flowed. (R. 810-11, 903-05, 1232.) Consequently, it was error to hold that as a matter of law the two devices are dissimilar.
 
 
 70
 As to the question of whether there was one or two liquefying units, again we face a question of fact, not law. The deposition of Mr. Morton, the Admiral Engineer, does not "clearly" show, as counsel for appellant maintains, that "the accused devices have only one liquefying unit." (Emphasis his.) He did testify that there was only one condenser, but he also definitely stated that "there are two liquefying units."[11] Apparently he did not agree with another witness that a "liquefying unit" is a "condenser." The trier of fact was not bound by a particular expert's interpretation or understanding of the matter.
 
 
 71
 We rule that the trial judge was incorrect in holding the accused device contained two liquefying devices, and the patent in issue one, as a matter of law.
 
 
 72
 There was thus some substantial evidence in the record in both areas of Infringement to support the verdict of the jury.
 
 (III) Damages
 
 73
 The amount of damages is clearly an issue of fact. We do not need to discuss it further here, by reason of our ruling as to the two issues denominated (I) and (II), supra. In view of our disposition of the other points, we need not consider appellant's points IV and V.
 
 
 74
 Turning from the factual situation once again to the law, we are convinced that the District Court erred on each of the first two specifications urged upon appeal (as to Patentability and Infringement) in entering a judgment non obstante veredicto. The trial judge would have committed the same error had he directed a verdict against the plaintiff at the conclusion of the production of evidence. There was then, as after the verdict, some substantial evidence to go to the trier of fact on each of these two issues.
 
 
 75
 But having permitted the jury to come to its conclusion on the facts, the trial judge then had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice. Marsh v. Illinois Central Ry. Co., 5 Cir., 175 F.2d 498.
 
 
 76
 There is ample support in the evidence for the trial court's ruling, when tested by the "weight of the evidence" rule which it was the duty of the trial court to apply in determining the motion for new trial, just as it was his duty not to supply it in considering the motion for a directed verdict and for a judgment non obstante veredicto. The matter is entirely within the discretion of the trial judge, and we cannot say his determination of that issue constitutes any abuse of his discretion. We come to this conclusion after a careful reading of the transcript and an examination of the evidence, some of which is referred to in the earlier part of this opinion.
 
 
 77
 We share with the trial judge the concern over the length of this litigation, and the expense that has been incurred by both sides. But our concern cannot be the basis for any ruling not completely consonant with the law applicable to this case.
 
 
 78
 The action of the District Court in granting judgment in favor of the defendants non obstante veredicto is reversed; the alternative action of the District Court in granting a new trial to the defendants on the grounds specified in the Court's Order, is affirmed.
 
 
 79
 The case is remanded for further proceedings in the court below. Costs on this appeal to appellant.
 
 
 80
 Affirmed in part and reversed in part.
 
 
 
 Notes:
 
 
 [1]
 28 U.S.C.A. § 1338
 
 
 [2]
 Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A
 
 
 [3]
 At the conclusion of the evidence, plaintiff also moved that certain issues be withdrawn from the jury, namely, (a) the validity of the Reissue Patent; (b) the right of plaintiff to maintain the action; (c) any issue of infringement of Claims 1 to 4 inclusive, of the Reissue Patent. This motion was denied in toto
 
 
 [4]
 "I know how I am going to decide this motion. I have read the testimony, and I have read my instructions. I do not believe any useful purpose will be served to delay my decision on the motions for a directed verdict and for judgment notwithstanding the verdict
 "I am of the opinion that the motions must be granted. I am also of the opinion that even assuming validity and infringement there is no rational basis for the amount of the verdicts that were rendered against defendants Admiral Corporation and Amana Refrigeration, Inc., or either of them.
 "Both before and during the trial I informed counsel that I wanted to submit this case to the jury because it had been pending for a long time. It had already been to the Court of Appeals once, and the expenses incurred by both sides were great. In addition to numerous depositions of witnesses residing in the East and South, there were a number of lay and expert witnesses from various parts of the United States, and out-of-town counsel were here for many weeks even before the trial.
 "At the conclusion of the plaintiff's case in chief I seriously considered directing a verdict in favor of the defendants because from the testimony and the exhibits, particularly the prior art patents, it did not appear to me that the plaintiff's patented device had met the rigid standards of invention laid down in Berkeley Pump Co. v. Jacuzzi Bros., 9 Cir., 1954, 214 F.2d 785; and in numerous other decisions from our own Circuit as well as from the United States Supreme Court, involving the `assembling (of) old elements, the previous functional operations of which are not changed by their arrangement and inclusion in the device.'
 "The patent in suit involves improvement in an household refrigerator. Each element in the alleged combination was old in the art. They consist of a cabinet, a cooling compartment, a freezing compartment, thermal insulation, a cooling refrigerant expander, a freezing refrigerant expander, a volatile refrigerant, a single liquefying unit, and a thermostat. All of these elements, when combined together — and I am not using the word `combined' as a word of art — acted as they had acted in the past, and the end result did not exceed the sum of its parts. Or, stated differently, the old elements making up the device did not perform an additional and different function than they performed out of it.
 "I was also of the opinion that the alleged combination of the patent in suit `did not perform some new and different function — one that has unusual or surprising consequences.'
 "The patent in suit consisted of a household refrigerator having a separate freezing compartment and a separate cooling compartment operated by a single liquefying unit with the cooling compartment having a humid temperature, or moist cold, and with a non-frosting coil in the cooling compartment.
 "I, therefore, came to the conclusion that even if Anderson or some other prior art patent had not fully anticipated the patent in suit in every material part, it was nevertheless invalid because it did not meet the standards of invention as laid down in the decisions to which I have already referred.
 "I was also concerned about the fact that although it was conceded that the validity of the patent in suit is dependent upon the existence of a fin coil or other extended surface coil, such a coil was not disclosed in the specification. Plaintiff's expert testified that by looking at the drawing he could tell that a fin coil or a brine tank was described. He, therefore, contended that the failure to disclose the fin coil in the specification did not invalidate the patent. However, it appeared to me that the requirements of 35 U.S.C.A. § 112, had not been met.
 "I likewise was in doubt as to whether the claims were sufficiently definite to satisfy the statute. In spite of such conclusions and doubts, I denied defendants' motion for a directed verdict at the end of plaintiff's case in chief.
 "Thereafter, Mr. Glenn Muffly, defendants' refrigeration and patent expert, testified at great length concerning the validity of the plaintiff's patent in suit and also concerning infringement. The only information elicited from Mr. Muffly on cross-examination was that he regarded the Anderson patent as the closest to the patent in suit. Thereafter, Mr. Parker, plaintiff's expert, again resumed the stand and contradicted the testimony of Mr. Muffly with respect to certain conclusions about which he had testified.
 "When all of the evidence was in, the defendants again moved for a directed verdict on the same grounds which they had previously urged. Again, I seriously considered granting the motion because by that time it had appeared that, in addition to the patent being invalid, it had not been infringed.
 "There was no dispute about the structure of the accused devices. They were cold wall refrigerators as distinguished from the fin-type refrigerator which is exemplified in the patent in suit. Likewise, all of the claims of the patent in suit call for a single liquefying unit; in the accused structures there were two liquefying units, each of which had its own volatile refrigerant flowing through a separate and distinct circuit.
 "Parenthetically, I might add that during the argument to the jury plaintiff's counsel stated that the use of a primary and secondary circuit in the accused structures was an improvement over the structure described in the patent in suit. I wondered at the time how he could establish identity of structure with this admission.
 "Although plaintiff's counsel denied that the doctrine of equivalents was applicable, the only basis I could discover upon which the jury might find identity of structure was in that doctrine. The jury, in answer to the special interrogatories, found them to be identical, a finding which in my opinion was proper only if the patent in suit was a pioneer one.
 "In spite of my added doubts concerning infringement, I decided to submit the whole case to the jury in the hope that another trial could be avoided. If I directed a verdict in favor of the defendants and the Court of Appeals held that I should have submitted it to the jury, then all of the time, trouble and expense incurred in this trial would have been wasted; but if I permitted the jury to make a determination and the jury found in favor of the plaintiff, I could then set aside the verdict and the Appellate Court would merely be presented with the questions of validity and infringement and could reinstate the verdict if they thought that I had erred. Unfortunately, the verdict of the jury does not make this possible. As I stated previously, there is no rational basis for the amount of damages fixed by the jury.
 "Even if this patent is valid and infringed, it was a minor improvement in a crowded field, and in my view a royalty of 3 per cent on the selling price or 5 per cent on the manufacturer's price is completely out of line. In addition to a few licensing agreements, none of which showed such a high rate, the only other evidence was the testimony of Mr. Parker based upon a hypothetical question, which assumed that the patent in suit was a pioneer patent or one that had made a long stride in the refrigeration art.
 "An examination of the file wrappers of the original patent, as well as the patent in suit, clearly showed that this was not the case.
 "I appreciate the fact that the jury made specific findings, which are contrary to those expressed in this opinion. In spite of my strong attachment to the right of trial by jury, I cannot avoid the responsibility which is mine merely because a jury found to the contrary.
 "Judge Bone, in Berkeley Pump Co. v. Jacuzzi Bros., 214 F.2d 785, beginning at page 791, clearly sets out the obligation of a trial judge in cases in which `the jury has departed from the relevant legal criteria by which either a jury or a judge must be guided in their or his fact-finding function.'
 "I think that this jury listened carefully to the evidence and tried to render an honest and intelligent opinion. In spite of the attempts of plaintiff's counsel to inject prejudice into the case, I think he was unsuccessful, and I think that the action which I took during the trial and in my instructions to dissipate any such feeling was successful. However, I think that the fault lies in the manner in which the case was presented by the defendants.
 "At no time was the jury adequately informed of defendants' contentions. The jury, after listening to defendants' opening statement, must have come to the conclusion that the defendants were trying to withhold information from them. The witnesses were examined by defendants' counsel not with the view of convincing a jury, but solely for the purpose of appealing to the Court. It was a highly technical presentation, and the closing argument of counsel for the defendants can only be characterized as fantastic. I did not understand the `frost, defrost' argument which took up a large portion of time consumed by the defendants, and I am sure that the jury did not have the vaguest idea of what counsel was talking about.
 "However, I cannot permit a judgment on liability or a judgment on damages to stand where there is no basis therefor. Neither the good intentions of juries nor the ineptness of lawyers is an adequate substitute for evidence.
 "As an equitable defense, the defendants have raised the question of unclean hands. It may very well be that the manner in which this case is being financed is a violation of New York law. I am also concerned about the scores of people who, according to Mr. Potter, are now contributing and who over a period of years have contributed over a Million Dollars to him and his companies in connection with the prosecution of this patent and this litigation. However, I do not believe that these facts justify a holding of unclean hands.
 "I merely add that it was primarily because of these people that I did not direct a verdict earlier.
 "Counsel for the defendants may submit an order in accordance with this oral opinion, which will be transcribed and included in the file of this case and in any transcript that is sent to the Court of Appeals so that the Court of Appeals will know the reasons which motivated me to to enter a judgment in favor of the defendants.
 "That is my opinion and my ruling." [Tr. pp. 1499-1506]
 
 
 [5]
 Tr. p. 71
 
 
 [6]
 Plaintiff's Exhibit 2, Reissue Patent No. 23,058
 
 
 [7]
 Refrigeration Patents Corp. v. Stewart-Warner Corp., 7 Cir., 159 F.2d 972, certiorari denied 1947, 331 U.S. 834, 67 S. Ct. 1515, 91 L.Ed. 1847
 
 
 [8]
 This Court also noted that: "* * * the decision in Halliburton Oil Well Cementing Co. v. Walker, supra, came as something of a surprise to the patent bar, * * *" and, "[T]he broad scope of Halliburton has since been substantially narrowed in Faulkner v. Gibbs, 1949, 338 U.S. 267, 70 S.Ct. 25, 94 L.Ed. 62," referring to the Supreme Court's language which reads: "* * * Halliburton, supra, is inapposite. We there held the patent invalid because its language was too broad at the precise point of novelty. In the instant case, the patent has been sustained because of the fact of combination rather than the novelty of any particular element."
 
 
 [9]
 These elements are listed by the lower court as:
 (1) a cabinet,
 (2) a cooling compartment,
 (3) a freezing compartment,
 (4) thermal insulation,
 (5) a freezing refrigerant expander,
 (6) a cooling refrigerant expander,
 (7) a volatile refrigerant,
 (8) a single liquefying unit,
 (9) a thermostat.
 
 
 [10]
 At this point it should be kept in mind that the special verdicts of the jury found, with respect to the validity of the patents, (1) that the patent involved did "produce some new and different function, one that had unusual or surprising consequences;" (2) that the Bronaugh and Potter patent did make invention over the Anderson patent, and over the Anderson patent plus the Larkin patent; (3) that none of the four claims were "vague, indefinite, or ambiguous." [R. p. 65a]
 
 
 [11]
 Question: (By Mr. Cunningham) ". . . In the Admiral refrigerator, Model 1090, is there a single liquefying unit associated with the expanders and so constructed and arranged as to condense refrigerants expanded by heat extracted by the expanders from both the cooling compartment and the freezing compartment? A. No
 "Q. Will you explain that answer, please? A. The liquefying unit is so arranged as to liquefy the refrigerant circulated through the freezing locker. The refrigerant of the food liner is liquefied by a condenser associated with the secondary system.
 "Q. Do those condensers operate independently? A. There is only one condenser. You don't have a condenser in the secondary system.
 "Q. Do I understand your testimony to be that there are two liquefying units in the whole construction, one being associated with the expander in the cooling compartment? A. Yes, sir.
 "Q. Are those independent of each other? A. By that you mean will either one work independently of the other?
 "Q. Do they work independent of the other, as a matter of fact; to which there should be no disagreement. If we are reasonable men we don't disagree about facts. A. It is necessary to have a condenser of a secondary system at a lower temperature than the evaporator of the same system, and on that basis the refrigeration effect is provided by the freezing locker liquefying unit.
 "Is that what you are driving at?
 "Q. The freezing effect of what? The expanders in the cooling compartment? A. The expander in the cooling compartment. Part of that expander in the cooling compartment is attached to the condenser of the secondary system.
 "Q. And actuated thereby? A. Yes.