### KLEIN v. AMERICAN CASTING & MFG. CORPORATION.

### No. 45.

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1937.

Charles Fredericks, of New York City (Oscar W. Jeffery, J. Stanley Preston, and Charles Fredericks, all of New York City, of counsel), for complainant-appellant.

Tipple & Plitt, of New York City (George D. Richards, of New York City, of counsel), for defendant-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is the ordinary patent suit brought for infringement of United States patent No. 1,789,236 issued to the complainant-appellant, Samuel Klein. The invention relates to devices for securing or sealing the cords by which tags bearing price marks are fastened to garments in such a manner that the tags cannot be removed without mutilation of the seals, cords, tags, or garments.

The complainant, Klein, is the proprietor of a garment store on Union Square in New York City where he sells millions of women's dresses each year. The customers may select their own garments from those on display, pay to a cashier the prices marked on tags which are attached and take home their selections, but they are allowed to return them within five days, provided the goods with the attached seals and tags are found intact when returned. It is obvious that for the satisfactory operation of such a system seals are vital for the vendor's protection, yet they must be inexpensive and readily attachable to the garments while remaining irremovable therefrom unless destroyed or mutilated.

Klein had found trouble with the seals he had been able to secure prior to the time when the seal covered by the patent in suit was designed.

The design for a one-piece seal known as the Lox seal (Exhibit 6) is said to have cost from $4.50 to $5 per thousand and to have proved unsatisfactory. In this seal a small metal tip had to be inserted in the eyelet of the casing after the flanges that locked the walls of the casing had been fitted together. Sometimes this tip would not be pushed far enough into the casing to hold; on other occasions the end where it was inserted would open up. There was also waste of time and trouble with this seal by the entangling of the cords. In the hope of obviating the above defects Klein used a two-piece seal (Exhibit 7) such as is described in the United States patent No. 1,727,754 to Dessauer. The two parts had to be carried about by the operatives, picked up separately, and matched together. All this involved delay and expense. The evidence indicates that these seals cost $2.80 per thousand and that the matching and insertion of the knot in the seal required the use of both hands and delayed the work. Moreover, some of the pieces would not fit properly and had to be discarded.

Seals made in accordance with the teaching of the patent in suit cost only $1.10 per thousand. These seals can be applied at the rate of 320 per hour, and they have superseded others in the plaintiff's business. About 100 operatives are employed solely to affix seals, and only about half as large a force is required to apply seals made in accordance with the patent in suit as was necessary when the Lox seal was used. Millions of seals have been used by Klein and sold by licensees under his patent which has had a remarkable commercial development because the device is the first employing a one-piece seal that has proved satisfactory to the trade.

The seal of the Klein patent is made out of a single piece of metal. It is formed with two pivotable jaws adapted to sandwich the ends of the tie member between them and has a mechanism for locking them together after the tie member has been inserted. Each jaw has a substantially flat body portion and marginal flanges, the flanges of one jaw being telescopable with respect to the flanges of the other when the jaws are closed. A hinge upon which the two jaws pivot is made by bending the metal at their junction. The side walls in conjunction with the end walls form a chamber wherein the locking parts which consist of two metallic lips doubled back upon the end walls are so inclosed as to be incapable of manipulation. The marginal flanges are generally wedge-shaped in order to give the seal a form tapering toward the hinge so that a small cord can be grasped firmly while at the same time adequate room is provided internally for effective locking elements.

All three of the claims of the patent are in issue. The trial judge held the first claim not infringed because of the different structure employed by the defendant. He held the second claim anticipated by United States patent No. 1,160,034 to Bell and the third claim infringed, but he dismissed the bill because he thought that Klein and Kasanof, who applied for the patent in suit, were not the sole inventors but had had assistance from one Behrman. We think that the claims are all valid and infringed. They read as follows:

"1. A seal for a tie member comprising a pair of tapering jaws hinged together at their tapered ends and forming complementary telescopable portions of a chamber when brought together with the portions of the jaw adjacent the hinge in close association, the jaws being adapted to receive the tie member between them when open and to clamp said member along the lines of the hinge and between the adjacent portions of the jaws, and means within said chamber for automatically locking the jaws together in an inseparable manner.

"2. A seal for a string or the like comprising a pair of hinged jaws, each tapering toward the hinge and having portions adjacent the hinge which, when brought together, will grasp the string therebetween, and means on said jaws and spaced from said hinge and positioned in the wider portions of the jaws for automatically locking said jaws together in an inseparable manner and for holding the portions adjacent the hinge in a grasping relation to the string therebetween, said means being inaccessible against manipulation when the jaws are brought into their predetermined locked position.

"3. A seal for a tie member comprising a pair of jaws hinged together, each jaw comprising a body portion and triangular flanges depending from opposed sides thereof, each of the flanges of each jaw tapering from the free end of the body portion thereof to the hinged and thereof whereby to give each jaw a generally wedge-shaped conformation, the two jaws being movable relatively about the hinge to bring them into nested relation to form a chamber closed at the top by the body portion of one of the jaws and at the bottom by the body portion of the other jaw with the flanges of one jaw each in laterally overlapping relation to the corresponding flange of the other jaw to form side closures of the chamber, an interlocking element on one of said jaws, an end wall carried by the other of said jaws for forming an end closure for the chamber at the end remote from the hinge, said end wall having an interlocking element cooperating with the first mentioned interlocking element for locking said jaws together when they are brought into nested relation and holding said jaws against separation."

Defendant's counsel argue that an examination of the prior art shows that the claims are all invalid, particularly in view of United States patent No. 1,160,034 to Bell; United States patent No. 1,028,253 to Murray; and the British patents No. 16,004 of 1906 to Adler and No. 9285 of 1910 to Fusa.

The most formidable reference is the patent to Bell. One of the great merits of the Klein patent is that the locking means are inaccessible to manipulation, whereas the confining lip of Bell is not disposed like Klein's flanges within the side walls but is at the outer surface of the seal. Dessauer, who was thoroughly versed in seals, testified at the trial that the strip 12 of Bell, which was intended to confine the cords, could be readily pried open by a needle sufficiently to extract the cords. No attempt was made to disprove Dessauer's testimony. In Klein the cords and the knot may be inclosed in the chamber formed by the locked and inseparable tapering jaws. His seal will securely inclose the knot on all sides instead of merely clamping down the cord as does Bell's.

In Murray's patent, which shows two hemispherical hollow parts designed to contain various large articles and held together when closed by an interlocking hook, the parts are not telescoped but hinged on one side. This device has an entirely different construction from that of the patent in suit, was not intended to clamp a cord, and would not seem to be as readily adapted to such a use as the Klein seal. Moreover, the hemispheres could without difficulty be sufficiently separated by a screw driver or needle to extract the cord.

In the Adler patent the parts of the seal are assembled by using pliers and, as in Bell, are connected by a metal strap or hinge, so that there is no such protection of the cord and knot as in the Klein seal where the flanges extend substantially to the hinge itself. The Fusa seal has a structure quite different from that of the Klein patent. It has no tapering jaws, nor portions of the device adjacent to the hinge to grasp the cords and has a more complicated mechanism than Klein's. Moreover, the thread when inserted in the Fusa device would have to have many windings through the labyrinth which would be likely to impair a ready and secure joinder of the parts. The Klein patent was issued in spite of the Fusa patent, which was one of the references before the Patent Office when the Klein and Kasanof application was pending.

None of the above devices of the prior art ever met with any commercial success. The situation is one where, after repeated attempts and apparent failures of other inventors, Klein and Kasanof solved the problem of furnishing the trade with a simple, inexpensive, readily adjustable, and secure one-piece seal.

The next question is whether the defendant's seal infringes. It is said not to come within claim 1 because it has notches provided for the cord which are spaced from the hinge line. It is, however,

"adapted" to clamp the cord at the hinge and will do this whenever the string is drawn into the seal quickly and firmly. No more than this is necessary to meet the terms of claim 1. It is argued that the structure of defendant's commercial seal is different from that of the Klein patent because defendant's locking means are not "wholly within the chamber." We can see no distinction in that respect. In defendant's seal the locking means are plainly within the side walls and the end wall as they are in the Klein device and in each structure they are rendered inaccessible by being contained in that space. Nor can it be said that defendant's lock tongue is as much exposed as Bell's lock flange and lip and is not perfectly protected against tampering like Klein's locking means. Defendant's lock tongue is entirely within the chamber, whereas Bell's lock flange and lip are outside of the opposite jaw so that the jaws may be pried open somewhat like the case of a watch. It is further argued that defendant's seal has no corrugations adjacent to the hinge, and therefore falls outside of the phrase "portions adjacent to the hinge" in claim 2. But no such corrugations are mentioned in the specification or shown in the drawings. The words "portions adjacent to the hinge" relate to the parts of the jaws near the hinge which may grasp the cords between them. Even when the defendant inserts the cord in the notch used in its device, which is set a little back from the hinge, it infringes this claim. Claim 3 is plainly infringed, and the contention that the defendant's seal has no end wall such as is called for by claim 3 is quite without merit. The assertion that this claim is not infringed because the jaws in defendant's seal are not symmetrically similar finds no support either in the claims or in the specification of the Klein patent.

■ Finally, defendant argues that the patent was not the invention of Klein and Kasanof, who filed the application, but of Behrman, or Kasanof singly, or of these two men and Klein jointly. We think that Behrman was not a prior inventor, in spite of the fact that he filed applications for a seal which would apparently come within the claims of the Klein patent, only a few weeks before Klein and Kasanof filed the application for the patent in suit. The documentary proof satisfies us that the invention was made by Klein and Kasanof before Behrman designed his seal. On February 9, 1928, Gluck, who was the attorney for Klein and Kasanof, made a sketch of a seal, which had a locking means at the end, like that described in the patent in suit. This sketch (Exhibit 16) was from a model made by Kasanof. The original model was made from a "Between-The-Acts" tin box and Kasanof testified it had an end lock like that of the patent. (Record, p. 86.) At that time Behrman had not designed anything, and only after learning of the Klein device did Behrman file his application which contained a side, rather than an end, lock. A seal with this side lock is the improvement that the plaintiff now uses as his commercial device after having purchased Behrman's patents. There is ample evidence that Klein constantly made suggestions to Kasanof and collaborated with him in designing the one-piece seal which finally became the subject of the patent in suit. Under such circumstances there can be no doubt that Klein and Kasanof were joint inventors. Kasanof testified about Klein's co-operation as follows:

"We both discussed that if possible the seal should be a one piece seal * * * so that was agreed upon, that if we could work something out or get something that could be handled with one hand, leaving the other free to manipulate the garment, the string, and the tag, it would be of great advantage."

■ Both Kasanof and Klein testified as to the various suggestions which each contributed in their endeavor to make a one-piece seal. The defense of lack of joint invention has not been established and is a kind of defense that is regarded with disfavor. Buono v. Yankee Maid Dress Corporation (C.C.A.2) 77 F.(2d) 274; De Laski & Thropp Circular Woven Tire Co. v. William R. Thropp & Sons Co. (D.C.) 218 F. 458, 463, affirmed (C.C.A.3) 226 F. 941. Accordingly we hold that Klein and Kasanof were the inventors, that the patent in suit properly issued to them, and that the defendant has infringed all three of its claims.

It is ordered that the decree be reversed and an interlocutory decree enter adjudging the patent valid and infringed and providing for the usual injunction and accounting, with costs to the appellant in this court.

L. HAND, Circuit Judge (dissenting).

I cannot see any room for invention over Fusa and Bell. I agree that they are

different, but there is no evidence that they had been tried and found wanting, or that the art had to wait for the patent in suit. So far as I can see, Fusa would have worked just as well; and, if there had developed difficulties in its operation, I should think that they could have been readily remedied. The real invention lay in two shells, joined by a hinge, and interlocking in such a way as to be untamperable without destruction. Of course I do not mean that no possible variation on that theme could be an invention; but where the departure was in mechanical details, as here, I should have to be convinced by more impressive evidence that the earlier forms had been unsuccessful. Often the art contains earlier solutions as good as the last that succeeds; it seems to me that we ought to know that these have been tested and failed before we disregard them as anticipations.