**SAVOY LEATHER MANUFACTURING CORPORATION, Plaintiff-Appellant,**

v.

**STANDARD BRIEF CASE CO., Inc., Defendant-Appellee.**

**No. 27, Docket 25007.**

United States Court of Appeals Second Circuit.

Argued Oct. 16 and 17, 1958.

Decided Nov. 17, 1958.

Harry Price, New York City, for plaintiff-appellant.

John P. Chandler, New York City, for defendant-appellee.

Before HAND, HINCKS, and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

The plaintiff brought this suit in the Southern District of New York for infringement of Patent No. 2,502,275 granted in 1950 and held by it as assignee. The judge made unreported Findings of Fact and Conclusions of Law. He determined that the plaintiff's patent was invalid for want of invention and dismissed the suit. The correctness of his determination of invalidity presents the only question on this appeal.

The patent in suit rests upon six claims, but these are to a large extent repetitive, and the appellant concedes that claims 1 and 6, set out in the margin, fairly describe the claimed invention.[1] The patent is upon a brief case,

---

[1] "1. In combination, a brief case having an inside medial portion, a loose leaf ring binder for detachably holding a stack of sheets, a flexible carrier underneath said binder and having sides extending laterally of the latter for straddling the sides of said stack, means permanently securing said binder to said carrier only, and

consisting of three principal parts: a portfolio, which can be closed by a hookless fastener to protect the papers within, a removable ring binder, and a "carrier," comprising a flexible strip of leather attached to the binder protecting the portfolio from wear from the rings. The essence of the claimed invention lay in the combination of the parts within the portfolio: the ring binder was permanently attached to the carrier by rivets, but the carrier was also provided with snap fasteners and could thus be easily attached to, or removed from, complementary fasteners at the base of the portfolio.

Consideration of the file wrapper of the patent in suit leads to a more exact understanding of the exact coverage of the patent grant. The patentee's first broadly stated claims to a brief case with a detachable carrier and binder were rejected after consideration of Krick, No. 504,840; Price No. 255,331; Reuben, No. 2,226,387; and Wedge, No. 2,325,-155. All these patents provided for a cover and a detachable loose leaf binder. To make the binder detachable by the use of snap fasteners, the examiner held, would not require invention in view of Widder, No. 1,999,553, or Lewis, No. 2,068,058, showing snap fasteners in cognate devices. In the following months twelve more claims, with amendments thereto, were added by the patentee. These claims predicated novelty upon the detachable carrier which was permanently secured to the binder. These claims were also rejected on the basis of Murphy, No. 1,818,999, a patent in which the carrier was attached to the ring binder, but the binder itself contained the means for detachably

securing it to the portfolio. The claims were also rejected for multiplicity, the examiner suggesting that the claimed invention could properly be stated in a single claim. Finally, after further amendment, four claims emerged which were allowed by the examiner. The patentee appealed from the denial of eight claims but the Board of Patent Appeals affirmed the examiner. The claims which were finally allowed rested upon an alleged novelty in attaching the ring binder, by rivets, to the carrier only and in attaching the carrier to the portfolio by snap fasteners independent of the rivets. The advantage of the claimed invention was said to lie in the ease with which the carrier and binder could be removed and inserted.

At the trial in the District Court, Judge Palmieri found that all the elements were known to the prior art which also revealed binders which could be detached from covers. The use in brief cases of snap fasteners and of the carrier as an intervening element, be held, were new,[2] but would have been obvious to one with ordinary skill in the art. Since he held the patent invalid, he made no findings as to infringement.

Upon this appeal, the plaintiff contends that the trial court was wrong in concluding that the Perlin patent's improvement over prior art was too insubstantial to amount to invention. It contends that the trial court failed to give the proper weight to the examiner's conclusion of patentability and that this presumption is doubly strong when most of the patents upon which the trial court based its conclusion of invalidity were also before the examiner.

spaced complementary detachably associated snap fastening means independent of said means permanently securing said binder to said carrier only and secured to said carrier and said medial portion."

"6. As a new article of manufacture, a loose leaf binder, a U-shaped flexible carrier having an intermediate portion arranged underneath said binder and including yieldable sides extending laterally of said binder for straddling the latter, rivet means spaced longitudinally of

said binder and disposed near the ends of the latter and extending there through for permanently fastening said binder to corresponding ends of said intermediate portion only, and spaced snap fastener elements independent of said rivet means and secured to said intermediate portion and in part extending below the latter."

2. This finding may be unduly favorable to appellant in view of Murphy, No. 1,818,-999.

Thus once more we must decide whether a patent rests upon a sufficient "invention"—"perhaps the most baffling concept in the whole catalogue of judicial efforts to provide postulates for indefinitely varying occasions." Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, 536. As we held in that case, the "codification," in 35 U.S.C.A. § 103, of the case law actually signified a legislative intent to reaffirm the test of Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683. However that may be, the invention here fails to meet the test provided by the plain language of § 103, for "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."

In Perlin's combination, the elements were all known: the portfolio, the protective carrier and the ring binder had all been long in use, and in use together. Furthermore ring binders detachable from their containing portfolios were well known in the art. Although the use of snap fasteners *in brief cases* apparently was new, the examiner, rightly we think, refused to issue the patent upon this basis, in the light of their use in cognate fields. The introduction of the carrier between the portfolio and the binder, with the carrier permanently fastened to the binder by rivets independent of the snap fasteners, is the essence of the claimed invention. But the function of none of these elements is materially changed. The portfolio still contains the papers; the ring binder still holds them; and the carrier still protects the portfolio from rubbing against the metal rings. The effect of the claimed invention is to allow easier detachability than in the Reuben patent, for example. But it seems clear from the record that the ease of detachability depended upon the use of snap fasteners in place of Reuben's screws, a non-patentable variation, at least as much as upon the interposition of the carrier. We agree with Judge Palmieri that the precise way in which the carrier was fastened to the binder did not amount to patentable invention.

Nor do we find much significance in the six year lapse between the granting of the Reuben patent in 1940 and the granting of the patent in suit. The record is bare of evidence, one way or the other, that the problem which Perlin claimed to have solved had occupied the attention of inventors in the field without the achievement of any successful solution. It is as plausible to attribute the six year lapse to the belief on the part of mechanics in the art that in light of the highly developed state of the art an advance so small as that of Perlin was not patentable.

Finally, we can find no error in the conclusion of the trial judge that the proofs were sufficient to overcome the presumption of validity raised by the issuance of the patent. We cannot allow the tortuous progress of the patent through the Patent Office, as a result of the "antlike persistency of patent solicitors," Gentzel v. Manning, Maxwell & Moore, 2 Cir., 230 F.2d 341, 345, to obscure the absence of a genuinely patentable conception.

Affirmed.