**E. J. BROOKS COMPANY, Plaintiff-Appellant,**

v.

**STOFFEL SEALS CORPORATION, Defendant-Appellee.**

No. 82, Docket 25191.

United States Court of Appeals
Second Circuit.

Argued Dec. 11, 1958.

Decided May 4, 1959.

Henry R. Ashton, New York City (Robert Henderson, William K. Kerr, and Francis J. Sullivan, New York City, on the brief), for plaintiff-appellant.

A. Yates Dowell, Jr., Washington, D. C. (A. Yates Dowell, Washington, D. C., and Leonard L. Berliner, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and HINCKS and LUMBARD, Circuit Judges.

CLARK, Chief Judge.

This appeal is from a decision below, D.C.S.D.N.Y., 160 F.Supp. 581, rendered on defendant's counterclaim holding plaintiff to have infringed defendant's Ashton Patent No. 2,611,198 for a poultry tag. The sole issue is as to the validity of the patent, since the plaintiff is not here attacking the finding of infringement against it. No question is raised as to the court's rulings of invalidity of two other patents in issue at the trial.

The Ashton poultry tag patent covers a device exceedingly simple both in construction and in function; and the court below sustained it almost entirely on the device's commercial success and a finding that it filled long-felt needs in the tag-making industry. The device covered by the patent is a simple metal tag designed for attachment to the dressed carcass of a chicken or other fowl. It is stamped

of a single piece of thin bendable metal, the main portion of which is surrounded by a curved lip with an opening in one end and a narrow tongue of metal at the other conveniently bent toward this opening in two places so as to flatten out and clamp a fold of poultry skin in it when the tongue and main portion are pressed together. The use of metal tags is quite old in the poultry industry,[1] and novelty is claimed only in the clamping or grasping manner by which Ashton's tag is attached to the bird. The clip-type tags previously in most common use were affixed by a sharply pointed tongue which pierced through the skin of the fowl on compression and then bent backwards, locking the tag.

The trial court found that the Ashton tag filled a need long felt in its industry. But apart from the usual and common desire of manufacturers constantly to improve their product—the stimulus of nearly all routine engineering improvements—there is no evidence of any specific and recognized problems which the claimed invention solved. While there is some evidence that the older clip-type tags were difficult for housewives to remove and their piercing of the skin of the bird decreased the value of the poultry, it is not clear that Ashton's patented device eliminated either of these difficulties. The patent itself stresses the tag's tightly locking feature, rather than any ease of removal.[2] And as its claims are not limited to blunt-tongued tags which will not pierce poultry skin, many of the tags shown at the trial to be made under or in infringement of the patent have sharp or even double-pronged tongues to allow them to pierce, as well as clamp, the skin of the bird. The testimony of Hans F. Stoffel of the de-fendant corporation is typical of the record on this point. When questioned by the court as to the *problem* on which he and the rest of the industry allegedly had been working before Ashton came out with his tag, he could answer only in terms of Ashton's *solution,* and how good that was, surpassing his own prior efforts in various features. Additionally, the finding that Ashton solved problems of long standing in the industry is belied by the discussion in the patent itself: "In the past wing-tags have been popular and quite satisfactory for certain purposes. They were variously constructed but usually were so made that they could be conveniently and securely clipped to the wing of a bird but were unsuitable for clipping to the breast. *Recently* however there has been a demand for a breast tag." (Emphasis added.)

The record is similarly ambiguous as to the several advantages Stoffel claims for the patented device. While Stoffel did show that the tags were somewhat less expensive to manufacture, store, and ship than those previously used, these savings seem due principally to the use of less metal on their backs—a feature easily duplicated on the older clip-type tags as well, and wholly unrelated to the workings of their clamping mechanism. Moreover, while they may be somewhat more easily applied to poultry than the older tags, we cannot find how significant this improvement may have been, since there is no proof of the rate at which a skilled operator could apply the clip-type tags.

On this record we cannot find any invention in the Ashton patent. While we need not decide whether Ashton was anticipated by the Bicknell paper clasp

---

1. As is the use of price or grade-defining tags generally. Thus see E. J. Brooks Co. v. Klein, 3 Cir., 114 F.2d 955, invalidating such a patent, and Klein v. American Casting & Mfg. Corp., 2 Cir., 87 F.2d 291, L. Hand, J., dissenting, upholding one. Both cases deal with the usual issues of claimed mutilation of the product and commercial success.

2. "Continued pressure * * * forces the locking tongue * * * to snap into the reverse angular position shown in Figure 5. In that position the tag is 'locked' to the skin of the fowl carcass and may not be removed without damage to or destruction of the tag."

patent No. 1,163,127 of 1915 or the Buck & Barnes laundry tag patent No. 492,085 of 1893, the close physical similarity of these tags to Ashton's underscores its obviousness. It concededly differs from tags long used on poultry only in its mode of affixture. This change hardly reaches that level of invention required by statute and the Constitution for the grant of a patent monopoly. 35 U.S.C. § 103; U.S.Const. Art. 1, § 8.[3] Affixture by clamping is as common as the ordinary clothespin used to hold clothes on a line. And the bent metal tongue which develops the tag's clamping pressure is a simple toggle not unlike toggles used to develop a controlled pressure in devices as diverse as stone crushers, wagon brakes, and shoe trees.[4] Such an adaptation of a device common to many dissimilar fields, achieving no unusual results and solving no problems of recognized difficulty, is clearly not invention. Welsh Mfg. Co. v. Sunware Products Co., 2 Cir., 236 F.2d 225, 226.

The device is, in short, a simple and obvious gadget of the type held unpatentable in Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, or Savoy Leather Mfg. Corp. v. Standard Brief Case Co., 2 Cir., 261 F.2d 136, or Surgitube Products Corp. v. Scholl Mfg. Co., 2 Cir., 262 F.2d 824; and it is clearly more obvious than the widely used and highly successful Zoomar lens held not novel in Zoomar, Inc. v. Paillard Products, 2 Cir., 258 F.2d 527, certiorari denied 358 U.S. 908, 79 S.Ct. 237, 3 L.Ed. 2d 230. Indeed we know of no case in this circuit or in others which can be considered authority for sustaining so ordinary a device. Clearly Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, 536, certiorari denied Bausch & Lomb Optical Co. v. Lyon, 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799, does not support it; that case in fact recognizes "the continued authority" of Hotchkiss v. Greenwood, 11 How. 248, 267, 52 U.S. 248, 267, 13 L.Ed. 683, and its requirement that the improvement over the prior art must be more than would be obvious to a person having ordinary skill in the art. And that test is definitely and expressly carried over to the Patent Act of 1952, 35 U.S.C. § 103.[5] It cannot

3. "It is worth emphasis that every patent case involving validity presents a question which requires reference to a standard written into the Constitution." Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 154, 71 S.Ct. 127, 131, 95 L.Ed. 162. See also Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58; Gillman v. Stern, 2 Cir., 114 F.2d 28, 30, certiorari denied Stern v. Gillman, 311 U.S. 718, 61 S.Ct. 441, 85 L.Ed. 468.

4. While the patent stresses employment of the principle of the toggle, this perhaps assumes a scientific background for the device beyond what it deserves. For the toggle joint is essentially a device to develop extreme pressure where needed, see Webster's New International Dictionary (2d Ed. 1939) and 22 Encyc.Brit. 485(b) (14th Ed. 1929), while here strong pressure is rather eschewed, see text at note 2 supra. Further, the toggle principle itself is old and not patentable. See 11 The Oxford English Dictionary, Ti–Tz, 106 (1933), giving a definition from "1847 Webster." The patent itself stresses as an essential feature "an angularly bent tongue" so "arranged and dimensioned" as to be easily manipulated to catch a fold of chicken skin through an aperture in the tab portion when the tongue is straightened; but no attempt is made to define the amount of bend, and the invention in expressly not limited "to the shape of the parts shown in the drawings." A flexible and conveniently, but imprecisely, bendable metal hardly embodies originality.

5. As made explicit in the Reviser's Note to § 103 and the Committee Reports. Sen.Rep. No. 1979, 82d Cong., 2d Sess., June 27, 1952, 2 U.S. Code Cong. & Adm. News, pp. 2394, 2402, 2403 (1952); also H.R.Rep. No. 1923, 82d Cong., 2d Sess., May 12, 1952. As these materials show, the only change contemplated in this Act —essentially a codification and not a revision, see Federico, Commentary on the New Patent Act, 35 U.S.C.A. 1, 6 et seq. —was to disavow the implication read by some into the "flash of creative genius" characterization—as opposed to "merely the skill of the calling"—of Cuno Engineering Corp. v. Automatic Devices

be held satisfied by the convenient flexing of the metal tongue here.

■■■■ Where invention is so plainly lacking, commercial success cannot validate the patent. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235, affirming Jungersen v. Baden, 2 Cir., 166 F.2d 807; Bostitch, Inc. v. Precision Staple Corp., 2 Cir., 178 F.2d 332; Magnus Harmonica Corp. v. Lapin Products, 2 Cir., 236 F.2d 285; Kleinman v. Kobler, 2 Cir., 230 F.2d 913, certiorari denied 352 U.S. 830, 77 S.Ct. 44, 1 L.Ed.2d 51. As the cases just cited show, we have needed to view these insistent claims of commercial success with a degree of sophistication, lest we give undue rewards to skillful advertising. Here we have before us the two manufacturers who monopolize the American market which became active with the increased practice of tagging poultry as encouraged by the United States and Canadian Agricultural Departments. Certainly their business would grow under the circumstances. The district court, however, made no attempt to apportion the sales in terms of response to these various obvious stimuli. Perhaps an essay at such an informative evaluation would not have been possible on the evidence; at any rate, lack of real knowledge re-emphasizes the danger of substituting sales figures for novelty.

Judgment reversed; counterclaim dismissed; action remanded for the entry of a declaratory judgment holding the patent invalid.

LUMBARD, Circuit Judge (dissenting).

I dissent from the opinion of my colleagues because tested by the standard of invention this court adopted in Lyon v. Bausch & Lomb Optical Co., 2 Cir., 1955, 224 F.2d 530, certiorari denied 1955, 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799, the Ashton poultry tag patent No. 2,611,198 is valid. I agree with Judge Dawson's holding and with the reasons he has stated in his thorough and lucid opinion reported at 160 F.Supp. 581.

The Ashton patent covers a simple tag structure consisting of a single piece of thin bendable metal, the main portion of which has an opening near one end. The other end, which tapers to a tongue, is a toggle constructed of two sections joined by a bendable knee. When the knee is pressed against the main portion the tongue flattens out so that its tip engages the opening and holds the tag fast to the poultry skin which has been clamped between the opening and the tongue end. In the more technical language of claim 6 the invention is described thus:

"6. A tag structure comprising a main portion having an aperture, a locking tongue having a tip, said tongue extending normally at an angle with respect to said main portion and being integral therewith, said tongue comprising two sections joined to each other by a bendable knee, whereby said two sections form a toggle, which when moved

---

Corp., 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58, that the manner in which the invention was made, rather than the device itself, was significant. Among the many decisions holding that the stated test does not change the law, the following may be cited: Hawley Products Co. v. United States Trunk Co., 1 Cir., 259 F.2d 69, 70; Wasserman v. Burgess & Blacher Co., 1 Cir., 217 F.2d 402; Interstate Rubber Products Corp. v. Radiator Specialty Co., 4 Cir., 214 F.2d 546, 548–549; Vincent v. Suni-Citrus Products Co., 5 Cir., 215 F.2d 305, 315–316, certiorari denied 348 U.S. 952, 75 S.Ct. 440, 99 L.Ed. 744; Bobertz v. Gen-

eral Motors Corp., 6 Cir., 228 F.2d 94, 99, certiorari denied 352 U.S. 824, 77 S.Ct. 32, 1 L.Ed.2d 47; General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, certiorari denied Estate Stove Co. v. General Motors Corp., 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 348; Helms Products v. Lake Shore Mfg. Co., 7 Cir., 227 F.2d 677, 682–683; Pacific Contact Laboratories v. Solex Laboratories, 9 Cir., 209 F.2d 529, 532–533, certiorari denied 348 U.S. 816, 75 S.Ct. 26, 99 L.Ed. 643; Seismograph Service Corp. v. Offshore Raydist, Inc., D.C.E.D.La., 135 F.Supp. 342, 350.

against said main portion flattens out and lengthens to thereby bring about engagement of said tip of said tongue with said aperture."

This claimed invention has been very useful in the poultry business as the tag is easily and quickly attached to the breast of a fowl, lies flat so that the legend is easily read and can be easily removed.

While metal tags of all kinds and descriptions are old in the poultry industry and many others, it is the use of the toggle principle and the pressure which is thus continuously applied to clamp the poultry skin firmly against the aperture, which is the essence of the claimed invention of the Ashton patent. The device seems disarmingly simple but the record amply supports Stoffel's contentions that Ashton's tag filled a long existing need for a tag easy to attach and to remove; that Ashton's tag was far superior to any previously made, and that its overwhelming acceptance since 1949 is conclusive evidence of its superiority and dispels any possible doubts that it constitutes invention.

The appellant claims, and my colleagues agree, that Ashton's tag lacks patentable invention because it does nothing more than apply the principle of the toggle and its endwise pressure. It is true that where a principle, such as the toggle, is common to many dissimilar fields, its application to a new field may involve no more than ordinary mechanical skill. See, e. g., Welsh Mfg. Co. v. Sunware Products, 2 Cir., 1956, 236 F.2d 225, 226. But Ashton, by using the toggle action in his poultry tag to force the tongue against an aperture so as to catch and hold fast the poultry skin which comes between without piercing it, solved many difficulties of long standing in the poultry tagging business which had not previously yielded to continuous research and experiment. In such circumstances it is plain that, familiar though the toggle joint may be, it was not "reasonably obvious to one skilled in the art."

The difficulties with the prior tags, scores of which were in evidence, were the subject of comment and complaint over many years. Thus housewives complained that the tags were very difficult to remove and caused them to break their fingernails. Taggers also complained that the piercing-type tags injured the skin and caused the fowl to be downgraded, and that because the tags did not lie flat they caused damage to themselves and the information they bore as well as to the bird, and that, although breast tagging was most desirable, the old tags were primarily only suitable for use on the wing.

Brooks, in business since 1873, had used hundreds of different seals and had taken out about seventy-five patents in this field in an effort to solve these problems. Beginning in 1940 or 1941 Hans Stoffel, the head of Brooks' primary competitor, Stoffel Seals Corporation, also worked on a solution, and he had the assistance of one Stelzer. The United States and Canadian Departments of Agriculture for a considerable time also pursued similar experiments to develop a more satisfactory tag in order to encourage their programs for the grading and marking of poultry.

Of all who sought a workable solution, only Ashton devised a satisfactory product to meet the needs of all. His tag is lighter, cheaper to manufacture, store, ship and sell, more readily applied (3,000 per hour), lies flat, may be applied to breast or wing, won't pierce and apparently won't break fingernails. So successful was Ashton's solution, that since 1949, when production of his tag was commenced, these tags have taken over more than 90% of the market, including the three largest processors, Armour and Co., Swift & Co., and Wilson & Co., and their share of the market was still increasing when this case was tried in December 1957.

Thus while this little tag may seem at first glance very simple and obvious, a large and growing industry sought it continuously and unsuccessfully for many

years. Beside it the old tags, used for so long, are clumsy, expensive, inefficient and relatively difficult and unsafe to handle, and they cannot compete with it in the market place.

In my opinion the circumstances of the long search for a satisfactory solution, plus its extraordinary commercial success once it was marketed, leave no doubt that this poultry tag was much needed and that its advantages are so striking and such an advance over the prior art that invention has been established. Georgia-Pacific Corp. v. United States Plywood Co., 2 Cir., 1958, 258 F.2d 124, 133, certiorari denied 1958, 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112; Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 2 Cir., 1957, 247 F.2d 343, 347, certiorari denied 1957, 355 U.S. 952, 78 S.Ct. 537, 2 L.Ed.2d 529.

Since the 1952 Amendment to the Patent Laws, 35 U.S.C. § 1 et seq., and the codification of the rule that a duly issued patent is to be presumed valid, 35 U.S.C. § 282, courts must no longer approach the consideration of what is invention with specially restrictive judicial views of inventiveness. Georgia-Pacific Corp. v. United States Plywood Co., supra, 258 F.2d at page 133; Lyon v. Bausch & Lomb Optical Co., supra. The establishment of a more liberal standard than the "flash of creative genius" doctrine enunciated in the Cuno case was apparently one of the principal reasons why Congress passed the 1952 Patent Act, 35 U.S.C. § 101 ff., especially § 103. See e. g., Reviser's Note to § 103, 2d Para.; Note, 44 Georgetown L.J. 100 (1955); Harris, Some Aspects of Legislative Intent of the Patent Act of 1952, 23 Geo. Wash.L.Rev. 658, 676 ff. (1955). We so held in Lyon v. Bausch & Lomb Optical Co., supra, where the Cuno decision was cited as "the furthest departure" (224 F.2d 536) from the test of Hotchkiss v. Greenwood, 1851, 11 How. 248, 267, 13 L.Ed. 683, to which the 1952 enactment was held to have returned devoid of intervening glosses.

I do not understand that Judge Clark's opinion would advance a standard of invention any different from that which we unanimously expressed in Lyon v. Bausch & Lomb Optical Co., supra, which was reaffirmed by us in Georgia-Pacific Corp. v. United States Plywood Co., supra; Magnus Harmonica Corp. v. Lapin, 2 Cir., 1956, 236 F.2d 285, 296; Welsh Mfg. Co. v. Sunware Products, supra; Wilson Athletic Goods Mfg. Co. v. Kennedy Sporting Goods, 2 Cir., 1956, 233 F.2d 280; Vermont Structural Slate Co. v. Tatko Bros., 2 Cir., 1956, 233 F.2d 9; Gentzel v. Manning, 2 Cir., 1956, 230 F.2d 341. Thus we have recognized that the 1952 Patent Act has overruled Picard v. United Aircraft Corp., 2 Cir., 1942, 128 F.2d 632, and that Congress has made it clear that what was said in Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58, about a "flash of creative genius" was not a proper test of invention. If this be only codification at least we now start with 1952 and we no longer need consider decisions that look the other way.

As Judge Kalodner pointed out for the Third Circuit sitting *en banc* in R. M. Palmer Co. v. Luden's, Inc., 1956, 236 F.2d 496, 500, whether the 1952 amendments were a codification rather than a change in existing law depends entirely on what view any particular circuit had taken prior to 1952. He concluded with "There is no longer any doubt that the 'flash of genius' [test] has been laid to rest," and placed its determination in part on "the sensitive observations of" the Lyon case.

In my view the citation of the Cuno case in Judge Clark's footnotes is apt to be misleading as the implications of its "flash of creative genius" phrase, whether dictum or not, has been repudiated by the paramount authority of the Congress. Other circuits which have expressly adopted the analysis of Lyon v. Bausch & Lomb Optical Co., supra, are the District of Columbia, L-O-F Glass Fibers Co. v. Watson, 1955, 97 U.S.App.

D.C. 69, 228 F.2d 40, 47 and note 14; Third Circuit, R. M. Palmer Co. v. Luden's, Inc., 1956, 236 F.2d 496, 500; Fourth Circuit, Brown v. Brock, 1957, 240 F.2d 723. Only the First Circuit appears to have considered and rejected it. See, e. g., Hawley Products Co. v. United States Trunk, 1958, 259 F.2d 69.

As I would find the patent not invalid for lack of invention, it is necessary to discuss other claims of the appellant.

Brooks urges not only that the Ashton tag is not invention, but also that it was anticipated by the Bicknell paper clasp patent No. 1,163,127 of 1915 and the Buck and Barnes laundry tag patent No. 492,085 of 1893. I do not agree.

As Judge Dawson points out, these two prior patents both involve the clip principle in the execution of which the clip is made fast to the article by piercing it. Neither of these earlier patents uses the toggle or principle to hold the tag in place, without the necessity of piercing, by means of continuous endwise pressure. Both prior patents employed a sharp point designed to penetrate the paper or material and secure itself on the other side of the penetration.

Bicknell employed a "tapering tongue" which was set at an angle of almost 90 degrees to the upper part of the clasp; this provided for a downward puncturing of the paper when the clasp was pressed, after which the tongue locked under the end. There was no application whatever of the continuous endwise pressure of the toggle principle. When the top of the Bicknell paper clasp is pushed down the tongue does not operate as a toggle to hold fast by reason of the great pressure which the tongue exerts in the reverse angular position as shown in Figure 5 of the Ashton patent. Even the appellant's expert, Judah B. Felshin, was constrained to admit at trial that modifications would be necessary before any toggle action would result from a practice of the Bicknell patent.

The great difference between the Bicknell and Ashton patents is best understood by comparison of the ease with which the Bicknell fastener slips out and the relative difficulty of releasing the Ashton poultry tag, and the fact that the purpose of Bicknell is to pierce while Ashton is designed in order to avoid piercing.

The Buck and Barnes laundry tag patent likewise bears little resemblance to Ashton. There the two teeth at one end of the tag are pressed under the curved lip of the other end of the tag after piercing the cloth which lies between. The teeth are not at an angle but are merely at the end of the surface, and no endwise pressure against the teeth is developed by pressing them under the curved lip. Thus, despite appellant's claim that this "inherently provides a toggle action," it seems to me to be far removed from suggesting any. There is nothing in the prior art which anticipated the teaching of Ashton's patent.

The appellant also urges that relief should be denied Stoffel because of unclean hands in connection with the filing of another application relating to similar poultry tags by its employee Stelzer. I agree with Judge Dawson that the appellee's actions were proper, especially in view of the fact that it owned all the rights to both the Ashton and the Stelzer applications on which the Patent Office issued patents the same day and the net result is that there has been no extension of the patent monopoly. I also agree with Judge Dawson that there is no basis for holding that the appellee elected the Stelzer patent as against the Ashton patent.

For these reasons I would affirm the judgment below.