Richard T. BUSSEMER and Paul London and Louis Griff, Trading as Abbey-craft Products, Plaintiffs,

v.

ARTWIRE CREATIONS, INC.,
Defendant.

United States District Court
S. D. New York.
June 30, 1964.

Boyle, Feller & Reeves, New York City, Jack M. Steingart, New York City, of counsel, for plaintiffs.

Felshin & Rosen, New York City, Judah B. Felshin, New York City, of counsel, for defendant.

WEINFELD, District Judge.

In this patent infringement suit the defendant moves and the plaintiffs cross-move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, each side acknowledging there is no triable issue of fact, and further that the patent claim and prior art are, without expert aid, readily understandable.[1]

Plaintiff Bussemer, the patentee, together with his two co-plaintiffs, are the owners of Patent 3,083,836, issued April 2, 1963. The patent, in general, pertains to an entire integrated rack structure to be utilized in refrigerator freezer compartments to provide support for packages of frozen food and the like. The controversy centers about claim three, which refers only to a portion of the entire freezer rack. Claim three covers a rack for supporting ice trays in the freezer compartment, its essential function being to prevent the ice trays from adhering to the bottom of the compartment. It is generally referred to as an ice tray caddy. The rack is made of a wire core encased within a layer of vinyl resin. It is comprised of two co-planar side supports, four parallel cross braces and four parallel shelf braces. Each of the side supports has three legs, two parallel vertical legs and a horizontal leg connecting the vertical legs at the top. The side supports are connected together at each vertical leg by two parallel cross braces. Each of the cross braces is joined and metallurgically bonded to two horizontal shelf braces which connect the cross braces, forming horizontal planes. In lay language, what this amounts to is an ice tray rack coated with vinyl, designed to fit into a freezer compartment of a household refrigerator with a side structure supporting open rather than solid shelves on which ice trays rest.

The tray manufactured and marketed by the plaintiffs does not follow the claim specifications. It has four shelves, whereas the claim specifications require only two.[2] Another difference is that the corresponding vertical legs of the side supports are connected at the bottom by cross braces on which the structure rests. Shelf braces are attached to these cross braces, thereby constituting the fourth or bottom shelf. Also, all shelf braces of the manufactured product extend beyond the cross braces at one end, curve slightly upward to a vertical plane and are joined to form stoppers. The four stoppers so

1. See Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 233 F.2d 9 (2d Cir.), cert. denied, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956).

2. The commercial product introduced by plaintiffs as an exhibit on these motions contains four shelves. Defendant's Exhibit G reveals an advertisement by plaintiffs for a three-shelf tray, as well as a four-shelf tray.

formed prevent the ice trays from sliding off the rear of the rack.

The defendant's ice tray rack, which appeared on the market six months after the plaintiffs', differs in construction from the plaintiffs' caddy and the claim specifications. Among other matters, the defendant's device omits cross braces. Because of this omission the defendant's rack has an open channel in the center of the shelves which, incidentally, plaintiffs assert makes the defendant's rack less rigid than plaintiffs', although rigid enough to support ice cube trays.

The prime issue is the validity of the patent, the defendant contending that the alleged invention was obvious to one having ordinary skill in the refrigerator rack art. Plaintiffs, countering, contend that their device is a combination of elements which has resulted in a new and unexpected solution to an old problem— that of ice trays sticking to the bottom of freezer compartments—a solution not obvious to those skilled in the art when first conceived by the patentee. Apart from its basic attack, the defendant also urges that plaintiffs' failure to file a supplemental oath pursuant to Rule 67 of the Patent Office invalidates claim three.[3] We first turn to this preliminary objection.

■■ Claim three was filed after the application for a patent on the entire freezer compartment, but was not supported by a supplemental oath. A new claim, which depends entirely on features undisclosed in the original application, must be accompanied by a supplemental oath.[4] Where, however, substantial features of the new claim are part of the invention described in the "specifications sworn to," a further oath is not necessary.[5] The differences between claim three and the "specifications sworn to" are not substantial. If the vertical legs of each of the side supports in claim three were connected at the bottom by a horizontal leg, so as to form a closed rectangular loop, and if an additional shelf (composed of shelf and cross braces), similar to the others, were to rest on such hypothetical legs, claim three would be virtually identical to one of the compartments in the freezer compartment rack. The differences created by the absence of the two legs and additional shelf are not such so as to require the invalidation of claim three for failure to support it with a supplemental oath.

We next consider whether claim three is invalid for want of invention. The defendant's position in essence is that the prior art and the simplicity of the device foreclose a patent monopoly thereon. The plaintiffs acknowledge that the rack art is a crowded, yet comparatively simple one; they urge that small changes in a crowded art may constitute invention and that the patentee has achieved a small but genuine improvement which was neither obvious nor thought of by others. The essence of their position is

3. Rule 67 of the Patent Office provides: "(a) When an applicant presents a claim for matter originally shown or described but not substantially embraced in the statement of invention or claim originally presented, he shall file a supplemental oath to the effect that the subject matter of the proposed amendment was not part of his invention; that he does not know and does not believe that the same was ever known or used before his invention or discovery thereof, or patented or described in any printed publication in any country before his invention or discovery thereof, or more than one year before his application, or in public use or on sale in the United States for more than one year before the date of his application, that said invention has not been patented in any foreign country prior to the date of his application in this country on an application filed by himself or his legal representatives or assigns more than twelve months prior to his application in the United States, and has not been abandoned. Such supplemental oath should accompany and properly identify the proposed amendment, otherwise the proposed amendment may be refused consideration."

4. See American Safety Table Co. v. Schreiber, 269 F.2d 255, 265 (2d Cir.), cert. denied, 361 U.S. 915, 80 S.Ct. 259, 4 L. Ed.2d 185 (1959).

5. Schick Dry Shaver, Inc. v. R. H. Macy & Co., 111 F.2d 1018, 1023 (2d Cir. 1940).

that claim three is based on old elements which, when combined, produce a new result not achieved by the individual elements; that none of the various racks described in the patents cited by the defendant, either singly or in combination, suggests, shows or anticipates a rack for supporting ice trays in the freezer compartment of a household refrigerator to meet the problem of preventing the trays from adhering to the compartment. They urge the patentee's novel concept of coating wire elements of the rack with a vinyl resin gave the rack a new and useful function, thereby solving the problem. Plaintiffs, acknowledging, as indeed they must, that "it has been common for many years to encase metallurgically bonded wire cores within a layer of vinyl, in making household wired devices for use in refrigerators," [6] nonetheless urge the validity of the patent, contending that all prior patents relied upon by the defendant involve functions other than storing ice trays in household refrigerators.

The plaintiffs have the benefit of the presumption of validity of the patent issued by the Patent Office.[7] However, because of the "unavoidable obstacles to an accurate and impartial decision that are inherent in *ex parte* proceedings in the patent office," the presumption need not be accorded the weight of actual evidence or "affect a decision of invalidity that would otherwise be reached with confidence." [8] Rather, the presumption places upon the defendant the burden of proving invalidity, and in addition requires that "reasonable doubt on the question of validity be resolved in favor of the patent holder." [9] The strength of the presumption is diluted if relevant prior art, not cited before the Patent Office, is brought to the attention of the Court.[10]

The patents cited in the file did not cover refrigerator racks; those not cited but brought to the Court's attention by the defendant include a number of refrigerator racks. Those cited are: a wire bottle carrier (Lilja Patent, No. 2,981,440), storage racks (Hoover Patent, No. 2,930,486), storage and display racks (Beckner Patent, No. 2,850,172), a dishwashing machine rack (Fox Patent, No. 2,804,213), a work station rack (Joyce Patent, No. 2,367,218), and a large portable display rack (Mitchell Patent, No. 1,612,937). Those not cited are: a rack for ice cube and other trays (Bitney Patent, No. 2,627,981), a can rack for

6. Plaintiffs did not controvert this assertion by defendant, pursuant to Rule 9(g) of the Local Rules, which provides, in part: "All material facts set forth in the statement required to be served by the moving party [9(g) statement] will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

7. 35 U.S.C. § 282 (1958).

8. Lorenz v. F. W. Woolworth Co., 305 F. 2d 102, 105 (2d Cir. 1962). See Gross v. JFD Mfg. Co., 314 F.2d 196, 198 (2d Cir.), cert. denied, 374 U.S. 832, 83 S.Ct. 1873, 10 L.Ed.2d 1054 (1963). See also, Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 156–58, 71 S.Ct. 127, 132, 95 L.Ed. 162 (1950) (Douglas, J., concurring): "The Patent Office, like most administrative agencies, has looked with favor on the opportunity which the exercise of discretion affords to expand its own jurisdiction. And so it has placed a host of gadgets under the armour of patents—gadgets that obviously have had no place in the constitutional scheme of advancing scientific knowledge. A few that have reached this Court show the pressure to extend monopoly to the simplest of devices: [citing patent cases]." But see Georgia-Pacific Corp. v. United States Plywood Corp., 258 F.2d 124, 132, 133 (2d Cir.), cert. denied, 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958): "From * * * [the issuance of the patent] flows a presumption of validity, a presumption which is perhaps too often minimized in the courts."

9. Lorenz v. F. W. Woolworth Co., 305 F. 2d 102, 105 (2d Cir. 1962).

10. Zoomar, Inc. v. Paillard Prods., Inc., 258 F.2d 527, 530 (2d Cir.), cert. denied, 358 U.S. 908, 79 S.Ct. 237, 3 L.Ed.2d 230 (1958); Laka v. Columbia Pen & Pencil Co., 224 F.Supp. 741, 742 (E.D.N.Y.), aff'd, 324 F.2d 179 (2d Cir. 1963) (per curiam). See also, Heyl & Patterson, Inc. v. McDowell Co., 317 F.2d 719, 722 (4th Cir. 1963).

refrigerators (Considine Patent, No. 2,-125,000), racks for ovens, refrigerators and like compartments (Hatch Patent, No. 1,989,275), a kitchen (including refrigerator) rack for foods and dishes (Quisenberry Patent, No. 1,946,711), an ice box candy rack (Nusbaum Patent, No. 1,865,582), a portable drying apparatus (Ewart Patent, No. 1,267,524), and two display racks (Thomas and Anderson Patents, Nos. 719,060 and 1,712,192, respectively).

Vertical side supports very much like those used in claim three are found in the Thomas Patent (a display rack). There, the two vertical legs in each of two vertical side supports are joined at the top by a horizontal leg, thus providing the vertical support for the rack. This is precisely the mechanism of claim three. Comparable side supports are also found in the Hatch Patent (racks for ovens, refrigerators and like compartments), which reveals two vertical co-planar side supports, the vertical legs of each linked by three horizontal legs at various heights along the vertical legs. The shelving consists of eleven parallel braces, the first and eleventh looped so as to be attachable to the horizontal legs of the side supports, and two cross braces, one at each end, connecting all eleven shelf braces.

There are two major differences in structure between the Hatch Patent and claim three. First, instead of one horizontal leg linking the vertical legs of the side supports, they are connected by three such legs which also serve the function of supporting the shelf braces.[11] Second, the shelving consists of eleven parallel shelf braces connected by cross braces, instead of two parallel shelf braces connected by cross braces as in claim three. Thus, while the side supports are in many respects like those in claim three, the shelving is dissimilar.

In the Considine Patent (a can rack for refrigerators), the shelf structure is similar to that found in plaintiffs' caddy. The shelving in Considine consists of two cross braces connected to the side supports and two parallel shelf braces linked to the cross braces. That the shelf in the Considine Patent is not horizontal but inclined to allow cans to roll along it, does not change its structure. In fact, one of defendant's exhibits shows an advertisement of plaintiffs' product where the top shelf is inclined, as in the Considine Patent, supporting what appear to be frozen juice cans.

The Thomas, Hatch and Considine Patents reveal structural elements in the rack art, in the refrigerator rack art in the case of the Hatch and Considine Patents, similar to those found in claim three. That these patents were not cited to the Patent Office when it considered the Bussemer Patent and claims appended thereto, weakens the statutory presumption of validity in this case.

Since the plaintiffs do not dispute, as already indicated, that the application of vinyl resin to coat wire elements of household devices used in refrigeration is not novel per se, their claim to invention must rest in the main upon the structure of the rack and its use. They contend that in combination it attained an end not achieved by any other rack in the prior art, and accordingly the patent is valid.

 Section 103 of Title 35 sets forth the standard to be applied in determining whether a valid patent has been issued. That section provides, in part:

"A patent may not be obtained * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * "

A number of factors have proved useful in applying the section 103 standard.

11. In both the Hatch Patent and claim three it is, of course, the vertical legs of the side supports that ultimately support the shelf braces; in Hatch, through the horizontal legs of the side supports; in claim three, through the cross braces.

i. e., in ascertaining what would have been obvious to a person skilled in the art. Where the patent in issue combines elements from the prior art, the newness and usefulness of the combination is to be taken into account.[12] Other factors, by no means all, are the length of time the patent in issue was in need,[13] the overall effort made to obtain the device,[14] the difficulty of the solution ultimately arrived at,[15] the proximity between the field from which knowledge was taken to the field where it was applied,[16] and the general availability of the means used by the patentee.[17] Commercial success is in some respects like the presumption of validity. While no substitute for invention,[18] it is relevant to show inventiveness where the question is close.[19]

■■ It may well be, as plaintiffs say, that ice trays have been a particular irritant to the housewife because of their tendency to stick to the freezer compartment, and that plaintiffs' device serves to eliminate this source of irritation. Nonetheless, the Court, applying applicable standards to determine patentability, concludes that claim three of the Bussemer Patent does not represent a "genuinely patentable conception."[20] More than usefulness and novelty is required to show invention.[21] As our

12. Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177 (1882).

13. Tatko Bros. Slate Co. v. Hannon, 270 F.2d 571, 573 (2d Cir. 1959).

14. Welsh Mfg. Co. v. Sunware Prods. Co., 236 F.2d 225, 227 (2d Cir. 1956); Lyon v. Bausch & Lomb Optical Co., 224 F.2d 530, 535 (2d Cir.), cert. denied, 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799 (1955).

15. E. J. Brooks Co. v. Stoffel Seals Corp., 266 F.2d 841, 843 (2d Cir.), cert. denied, 361 U.S. 883, 80 S.Ct. 154, 4 L.Ed.2d 119 (1959).

16. Potts v. Creager, 155 U.S. 597, 606, 15 S.Ct. 194, 39 L.Ed. 275 (1895).

17. Reiner v. I. Leon Co., 285 F.2d 501, 504 (2d Cir. 1960), cert. denied, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961).

18. Gross v. JFD Mfg. Co., 314 F.2d 196, 200 (2d Cir.), cert. denied, 374 U.S. 832, 83 S.Ct. 1873, 10 L.Ed.2d 1054 (1963); National Mach. Co. v. Waterbury Farrel Foundry & Mach. Co., 221 F.Supp. 77, 92 (D.Conn.1963). See also, Stiegele v. J. M. Moore Import-Export Co., 312 F.2d 588, 591 (2d Cir. 1963): "While modern advertising techniques cast doubt on the reliability of commercial success as an indicium of novelty * * * striking commercial success is a relevant fact."

19. National Mach. Co. v. Waterbury Farrel Foundry & Mach. Co., 221 F.Supp. 77, 92, 93 (D.Conn.1963).

20. Savoy Leather Mfg. Corp. v. Standard Brief Case Co., 261 F.2d 136, 138 (2d Cir. 1958).

21. Plaintiffs place heavy reliance on Loom Co. v. Higgins, 105 U.S. 580, 26 L.Ed. 1177 (1882); Georgia-Pacific Corp. v. United States Plywood Co., 258 F.2d 124 (2d Cir.), cert. denied, 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958); Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 247 F.2d 343 (2d Cir. 1957), cert. denied, 355 U.S. 952, 78 S.Ct. 537, 2 L.Ed.2d 529 (1958); and Lyon v. Bausch & Lomb Optical Co., 224 F.2d 530 (2d Cir.), cert. denied, 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799 (1955). None of these cases predicate a finding of invention solely on newness and usefulness.

In Loom Co., the Supreme Court warned that a new device may mistakenly be regarded as obvious through the use of hindsight. The Court did not, however, find that newness and usefulness alone constituted invention. It stated that as a general but not invariable rule, that "if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, *it is evidence of* invention." (emphasis supplied) 105 U.S. at 591, 26 L. Ed. 1177.

In Georgia-Pacific Corp., the patent in question was novel and useful, but in addition, "numerous patents had attempted to deal with related and unrelated problems * * * but none had hit upon [the solution arrived at by the patent in suit]." 258 F.2d at 132.

In Technical Tape Corp., a patent combining cellophane and rubber-resin, both articles that were well known and whose properties were common knowledge, was upheld. The Court found that invention was established in several ways, one of

Court of Appeals recently said in Gross v. JFD Mfg. Co.: [22]

> " 'We do not mean that the plaintiff has not produced a useful article, and we have carefully sought to avoid confusing simplicity with hindsight. But it is not enough that the claimed discovery is useful, or even that it is an improvement. It must show an inventive advance, and must differ from elements previously known in such a way that the subject would not have been obvious to one skilled in the art.' " [23]

There is no evidence that others tried and failed where plaintiffs succeeded,[24] despite the availability of the means used by plaintiffs. Nor is plaintiffs' solution to an existing problem a technically difficult one. The elements of the claim—rack structure and vinyl resin coating—were known in the refrigerator rack art, the same art to which plaintiffs applied them.[25] The device covered by claim three is simple and obvious;[26] in fact, plaintiffs themselves admit its "simplicity," urging, however, that nevertheless, one should not be blind to its "character." Its "character," though, is nothing more than an aggregate—a very simple aggregate at that—of structures and materials already notorious in the same art. To so synthesize matters already known may have been a good idea, "but scores of progressive ideas in business are not patentable." [27]

As to commercial success, plaintiffs' affidavit and the exhibits attached thereto reveal that 131 orders for its product were placed within two days after the appearance of a newspaper advertisement; that 108 others were ordered by a nationwide jobber of unusual gifts and house-

---

which was that expert chemists of Du-Pont Co. and Johnson & Johnson had, for a number of years, unsuccessfully tried to achieve the results obtained by the contested patent. 247 F.2d at 347.

Similarly, in Lyon, at the time plaintiff's patent appeared, "[t]he most competent workers in the field had for at least ten years been seeking a hardy, tenacious coating to prevent reflection; there had been a number of attempts, none satisfactory." 224 F.2d at 535.

22. 314 F.2d 196 (2d Cir.), cert. denied, 374 U.S. 832, 83 S.Ct. 1873, 10 L.Ed.2d 1054 (1963).

23. Id. at 200, quoting Wintermute v. Hermetic Seal Corp., 279 F.2d 60, 62 (3d Cir. 1960).

24. See Welsh Mfg. Co. v. Sunware Prods. Co., 236 F.2d 225 (2d Cir. 1956) distinguishing Lyon v. Bausch & Lomb Optical Co., 224 F.2d 530 (2d Cir.), cert. denied, 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799 (1955), because there was "no evidence that there had been any sustained effort over a period of time to find a way of [reaching the result obtained by the patent in suit]." 236 F.2d at 227. See also, Savoy Leather Mfg. Corp. v. Standard Brief Case Co., 261 F.2d 136, 138 (2d Cir. 1958).

25. In Potts v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275 (1895), the Supreme Court noted that the critical eye with which courts regard transplanting ideas from one area to another depends on the similarity in the areas. Demonstrating this rule, the Court pointed out that invention was denied to one who applied the principle of an ice-cream freezer to the preservation of fish, but allowed to one who took a spring used in clocks, doors and other articles of domestic furniture and applied it to telegraph instruments. But see Welsh Mfg. Co. v. Sunware Prods. Co., 236 F.2d 225 (2d Cir. 1956) where the construction of pail handles, coat hangers and toilet paper holders was held admissible "to reflect common examples" of a device employed to fasten a sweat bar to sun glasses.

26. See E. J. Brooks Co. v. Stoffel Seals Corp., 266 F.2d 841, 843 (2d Cir.), cert. denied, 361 U.S. 883, 80 S.Ct. 154, 4 L. Ed.2d 119 (1959).

27. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950).

wares; and that because of defendant's activities, "many accounts" were lost. It should be noted, however, that the differences between the manufactured product—the subject matter of plaintiffs' sales—and claim three, already adverted to, presumably enhanced the saleability of the commercial product.[28] Thus, even if the question of validity were close enough to justify consideration of commercial success, the fact that plaintiffs' manufactured product differed in substantial respects from the claim would make its relevance doubtful. Even if two improbable assumptions are made, that the question of validity is close enough to warrant consideration of the sales of the commercial product and that such sales have bearing on the validity issue, plaintiffs have presented no evidence of striking commercial success.[29]

Defendant's motion for summary judgment on the ground that claim three of the Bussemer Patent is invalid is granted and the plantiffs' cross-motion is denied.

▆▆▆ Defendant also moves for an award of counsel fees pursuant to section 285 of Title 35, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." In the exercise of discretion this branch of the motion is denied. The facts of the instant matter suggest that plaintiffs' claim was not so wholly devoid of substance as to warrant an award to defendant pursuant to section 285.[30]

---

28. The commercial product has four (or three) shelves instead of two; the loops which appear at the end of each of the shelves prevent ice trays from sliding off the rear of the rack and perhaps from sticking to the walls of freezer compartments.

29. See Stiegele v. J. M. Moore Import-Export Co., 312 F.2d 588, 591 (2d Cir. 1963).

30. See Federal Welding Service, Inc. v. Dioguardi, 295 F.2d 882, 888 (2d Cir. 1961); Rohr Aircraft Corp. v. Rubber Teck, Inc., 266 F.2d 613, 624 (9th Cir. 1959); Hyster Co. v. Hunt Foods, Inc., 263 F.2d 130, 134 (7th Cir. 1959).